THE TOWN OF LAKE VIEW

*v.*

THE ROSE HILL CEMETERY COMPANY.

1. POLICE POWER *of State defined.* The police power of the State is co-extensive with self-protection, and is not inaptly termed "the law of overruling necessity."   It is that inherent and plenary power in the State which enables it to prohibit all things hurtful to the comfort, safety and welfare of society.   It may be exercised to control the use of property of corporations as well as of private individuals.

2. CONSTITUTIONAL LAW—*legislation as to franchises which are publici juris.* So far as franchises of a corporation are *publici juris*, the State may properly legislate touching them, and such legislation is not prohibited by that clause of the constitution of the United States which forbids the passage of laws impairing the obligation of contracts.

3. SAME—*police power, how far a political and how far a judicial question.* As a general proposition, it is the province of the law-making

70   191
121   212
70   191
140   317
143   454
70   191
155   111
70   191
163    65
70   191
185   142
70   191
186   449
70   191
193  1118
70   191
214  1635

power to determine when the exigency exists calling into exercise the police power of the State, but what are the subjects of its exercise, is clearly a judicial question.

4. SAME—*police power subject to constitutional limitations.* The exercise of this power is subject to constitutional limitations. It is essential that police regulations must have reference to the comfort, safety and welfare of society, and, when applied to corporations, they must not be in conflict with any of the provisions of their charters. Under the pretense of police regulations, a corporation can not be divested of any of the essential rights and privileges conferred by its charter.

5. SAME—*cemetery not a nuisance per se.* A cemetery is not a nuisance *per se,* and the subject of legislative prohibition. The legislature has the constitutional right to pass laws to regulate the interment of the dead, so as to prevent injury to the health of the community, and this in respect to a private corporation acting under a charter, as well as with individuals.

6. SAME—*prohibiting use of grounds for cemetery.* Where a cemetery company is chartered, with power to acquire lands for burial purposes, not exceeding five hundred acres, and it acquires the lands, and expends its money in preparing and adorning the same, an act of the legislature prohibiting the company from using any of its lands outside its then inclosure, for the burial of the dead, without regard to the manner of the exercise of its franchise, is unconstitutional and void, as impairing the obligation of the contract contained in the charter.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

Messrs. HITCHCOCK, DUPEE & EVARTS, Messrs. BECKWITH, AYER & KALES, and Mr. SAMUEL W. FULLER, for the appellant.

Messrs. TRUMBULL, ANTHONY, CHURCH & TRUMBULL, Messrs. BARBER & LACKNER, and Mr. VAN H. HIGGINS, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This bill was filed by the town of Lake View, to restrain the cemetery company from using certain lands, owned by it since 1860, for the burial of the dead, in violation of the act of March 29, 1869. Appellee was created a corporation by

the act of the 11th of February, 1859, with power to acquire, hold and use lands, not exceeding five hundred acres, in the town of Lake View, for cemetery purposes. The company was authorized, by its charter, to lay off and plat its grounds, to erect all necessary buildings, and to do all other acts that might be necessary to prepare them for the purposes intended. Its organization was completed, and a part of the lands purchased were inclosed and platted, and large sums of money have been expended in beautifying and preparing the grounds. The lands are situated near the lake shore, about seven miles north of the court house in the city of Chicago, and three or four miles north of the northern limits of the city. The town of Lake View contains about 8400 acres of land and 1500 inhabitants, but there are few dwellings near the cemetery.

In 1867, the corporate authorities of the town of Lake View passed an ordinance fixing the boundaries of the Rose Hill Cemetery, and its provisions were re-enacted by the act of the legislature, approved the 29th of March, 1869. The lands, which are the subject of this litigation, are situated outside of the limits, as fixed by the ordinance of the town and the act of the General Assembly, and it is made unlawful for the company to use them for cemetery purposes, as by its charter previously granted it was authorized to do.

The validity of the legislation restricting the cemetery company from enlarging its grounds, is the principal question in the case. While appellee claims its charter is in the nature of a contract that the State can not rescind or impair, it is conceded the State has the power to control the use of its lands for burial purposes, so that its use may not injuriously affect the health of the community, but the right to prohibit the company altogether from its use for the objects designated in the charter, is denied.

On the part of appellant, it is not denied, the charter of appellee is a contract on the part of the State, that the company may exercise the powers and privileges enumerated in

13—70TH ILL.

194          LAKE VIEW *v.* ROSE HILL CEM. CO. ·   [Sept. T.

Opinion of the Court.

the act of the General Assembly, but it is insisted it must be understood to have been made with reference to the possible exercise of the rightful authority of the government, and that the prohibition contained in the act is a proper exercise of the police power of the State, the legislature being the sole judge of the exigency when this power shall be employed.

The decision turns upon the single question, whether the restriction imposed upon the company, as to the use of its lands, as authorized by its charter, is a proper exercise of the police power of the State.

Without reference to the definitions given by law-writers and courts, of what is termed the police power of the State, in its more comprehensive sense, in its applications to the various relations of communities, when applied to matters like the subject of this litigation, it may be assumed that it is a power co-extensive with self-protection, and is not inaptly termed the "law of overruling necessity." It may be said to be that inherent and plenary power in the State which enables it to prohibit all things hurtful to the comfort, safety and welfare of society. It may be exercised to control the use of property of corporations as well as of private persons. In this regard there can be no distinction that can be justly taken. So far as franchises of a corporation are *publici juris*, it has always been held, that the State may properly legislate touching them. Such legislation is not prohibited by that clause of the constitution of the United States which forbids the passage of laws impairing the obligation of contracts, nor does it deprive such corporations of any of the substantial benefits intended to be conferred by the acts of incorporation. *The G. and C. U. R. R. Co.* v. *Loomis,* 13 Ill. 548 ; *Thorp* v. *Rutland and Burlington R. R.* 27 Verm. 140.

Mr. Cooley, in his work on Constitutional Limitations, states the doctrine thus broadly : "All contracts and all right, it is held, are subject to this power, and regulations which affect them may not only be established by the State, but must also be subject to changes, from time to time, with

reference to the well-being of the community, as circumstances change, or as experience demonstrates the necessity." Cooley on Limitations, 57.

As a general proposition, it may be stated, it is the province of the law-making power to determine when the exigency exists, calling into exercise this power. What are the subjects of its exercise, is clearly a judicial question. There must necessarily be constitutional limitations upon this power. It is essential that such regulations must have reference to the comfort, safety or welfare of society, and, when applied to corporations, they must not be in conflict with any of the provisions of the charter. It is not lawful, under the pretense of police regulations, to take from a corporation any of the essential rights and privileges conferred by its charter. Potter's Dwarris on Statutes, 458; Cooley on Const. Lim. 577. The right to control is essentially different, and rests on a different principle from the power to repeal, alter or amend charters of private corporations.

Burial places are indispensable. Convenient to the city of the living, a depository of the dead must be established and maintained. It concerns the public health, and if such places were not prepared by private enterprise, it would be the duty of the State to act in the premises. Among the most beneficent acts of government is that legislation which fosters such enterprizes, and clothes an aggregate number of citizens with with power to adorn and beautify grounds that shall receive the remains of our dead. The sentiments of our better natures, and the civilization of the age, demand that these sacred places shall be made attractive and beautiful by the employment of the highest skill in landscape culture, the erection of costly monumental structures and architectural adornings of elaborate design and workmanship. It is a part of the common history of the country, that, in the vicinity of large cities, where wealth and refinement abound, they are so arranged. They attract hither, as to pleasant places, lovers of the beautiful in nature, as to groves and parks that have

been adorned by the lavish expenditure of money, and the works of those most skilled in that department of labor. Such a place is very far from being a nuisance *per se,* and the subject of absolute prohibition by legislative action. *The Town of Lake View* v. *Letz et al.* 44 Ill. 81.

There is nothing in nature but may be the instrument of mischief, and the burial of the dead may be so done as to be most injurious in its consequences to the people in the vicinage. But that is not the question in the case at bar. By this act of the General Assembly, it was intended to prohibit, absolutely, the use of the grounds by the company for burial purposes. The act of granting the charter was, itself, a legislative construction that a cemetery is not necessarily a nuisance, if the grounds are well selected, and interments made with proper care. That it might become so, through misconduct, no one doubts. The General Assembly has the right to pass laws to regulate interments to prevent injury to the health of the community, and notwithstanding the company, in this instance, is exercising franchises conferred by the State, it is within legislative control in this regard.

There are now eight cemeteries within the limits of the town of Lake View. The establishing of new ones may be the subject of prohibition, as is sought to be done by this act of the legislature. That question is not involved directly in the decision of this case.

The evidence does not show there were any cemeteries within the limits of the town at the date of the company's charter, and when it was organized. The power to establish and maintain a limited number of cemeteries in a given territory, is a very different question from the right to establish an unprecedented number, that would cover the whole face of the country with burial places. The prohibition of the latter may be within the rightful exercise of the police power, and the other not. The one is an absolute necessity, and the other might impose unreasonable burdens on a single community.

In the case at bar, by the provisions of its charter, the company was authorized to buy and hold land, not exceeding a certain quantity, and to use it for cemetery purposes. This it can rightfully do, and while the State has the unquestionable power to regulate the manner of its use, so far as it may injuriously affect others, it can not, under the pretense of making police regulations, repeal its charter and revoke its franchises or deprive the company of any of the essential rights conferred by its charter.

The act of the legislature does not profess to correct any abuses in the use of the property, but is an arbitrary prohibition of its use in accordance with the provisions of a charter previously granted. Upon what principle can such a law be maintained, or what "overruling necessity" was there for its enactment? There is no pretense the cemetery, as constructed, is a nuisance, nor is there any charge that the health or comfort of the people in the vicinity has been or will be affected in the near or even in the distant future. If it can be maintained at all, it must be by some absolute power by which the General Assembly, it being the sole judge of the extent of its powers, may declare what shall and what shall not be independently of all constitutional restrictions. Reference is made to the reserved power of the State, denominated "police power," as affording the requisite authority. It has been said, the source of this extraordinary power may be readily recognized as flowing from the people in their organized capacity, inalienable in its character, but that it is difficult to define its boundaries or limit its operations. We are unwilling, however, to concede the existence of an indefinable power, superior to the constitution, that may be invoked whenever the legislature may deem the public exigency may require it, by which a party may be capriciously deprived of his property or its use, without compensation, whether such property consists of franchises or tangible forms of property. The constitution expressly provides, the right of property shall remain inviolate, and, upon all enumerated subjects, it

must constitute a limitation on the exercise of all power, no matter what its nature may he, nor whence its origin. If such was not the case, there could be no constitutional security for private rights, and the citizen would hold his property, corporeal and incorporeal, by a most uncertain tenure.

In this instance, if the General Assembly can rightfully prohibit the company from using its lands previously purchased, which lie outside of the present inclosure, for cemetery purposes, as authorized by its charter, upon the same principle it could prohibit the use of the now unoccupied portion of the inclosure, and as the property is valueless to it for any other purpose, and as the company could not lawfully use it, in any event, for other than burial purposes, it would amount to a deprivation of its use, and almost a total destruction of its value. The franchises conferred by the act of incorporation would be rendered valueless, unless they could be employed in the use of the lands previously purchased, and the capital invested in them would be imperiled, if not wholly lost.

It is not denied that the lands of this company are well selected, and are situated at a proper distance from the populous part of the city, in a sparsely settled community, there being but few dwelling in the immediate vicinity. If these lands can not be used, a very grave question would arise—where could the city find a burial place for its dead? The same power that prohibits the use of these grounds would extend to all places within the jurisdiction of the State. We can not assent to the proposition, that the General Assembly possesses any such power.

Under the power to regulate, the State can not deprive the citizen of the lawful use of his property, if it does not injuriously affect or endanger others. Among the beneficent provisions of Magna Charta is, the protection guaranteed the subject in the free enjoyment of his life, liberty and property, except as the same might be declared forfeited by the judgment of his peers or the law of the land. This cardinal

principle has been embodied in the constitutions of all the American States, and, by a recent amendment, it is now incorporated in the Federal Constitution. In view of this constitutional guaranty, it can not be said that every legislative enactment that affects the interest of the citizen, is necessarily the "law of the land." Such a construction would render nugatory every constitutional provision intended for the protection of private property.

If a person is to be deprived of his private property, it must be by the exercise of the right of eminent domain, and in all such cases just compensation must be made.

We are of opinion this act, so far as it limits the boundaries of Rose Hill Cemetery in the use of lands previously owned, not exceeding 500 acres, for the purposes named in the charter, is an unconstitutional exercise of power, and can not be maintained.

The bill was properly dismissed, and the decree must be affirmed.

*Decree affirmed.*

Mr. JUSTICE SHELDON, dissenting:

I can not concur in the denial of the power to the legislature to prohibit the particular use of land for the burial of the dead, when deemed necessary for the protection of the health, safety, comfort and welfare of community. It is an authority which has ever been exercised by the law-making power of a State. In Rome it was one of the laws of the twelve tables, *"hominem mortuum in urbe ne sepelite neve vicinitate."* *The City Council of Charleston* v. *The Wentworth Baptist Church,* 4 Strobhart, 310, *Kincaid's Appeal,* 66 Penn. State Rep. 423, *Coates* v. *The Mayor, etc.,* 7 Cowen, 584, are cases where such laws as applicable to existing burial grounds, were held to be constitutional and valid, and where their bearing upon the subject of private rights underwent a full discussion.

Restraints of such a particular use of property, are held to be a legitimate subject of the exercise of the police power

of the State. The power of the legislature to prohibit all future interments within the limits of the city of Chicago, I take it, is not to be questioned. There may be such a public exigency, that the same public considerations which would justify the exercise of the police power to make such prohibition within the limits of the city, would operate to render proper the making of the same prohibition at such a distance outside of the limits as that where the ground in question is situated.

Were things to remain as they now are, with no further increase of population in the vicinity of this cemetery ground, a court, perhaps, might see that there was obviously no exigency calling for this exercise of the police power; that it was not a police regulation in fact, and if claimed to be such, that it was only the pretense of a police regulation.

But it is apprehended that this police power may be exercised, as well to prevent what may be likely to become a nuisance, as to suppress an already existing one. In Cooley on Const. Lim., 595, the author, in reference to this subject, says: "And church yards which prove, in the advance of urban population, to be detrimental to the public health, or in danger of becoming so, are liable to be closed against further use for cemetery purposes."

In the case cited from 4 Strobhart, in speaking of this police power, it is said: "It is not necessary to the existence of the power, that there be a present occasion for its exercise. It is sufficient that a future emergency may demand it." In view of the narrow strip of territory comprising the town of Lake View, the large number of burial grounds within its limits, the increasing use of them for burial purposes, arising from the proximity of the town to the growing city of Chicago, which it adjoins; and in view of the rapidly increasing population of that city, which is constantly overflowing the city boundaries, and filling up the adjacent towns, the legislature, we may presume, for the purpose of preventing the mischievous consequences to the immediate neighbor-

hood from too many crowded burial grounds, has thought
proper to prohibit the extension of burial grounds within
that town.

Is it unreasonable to anticipate, in view of the marvelous
growth of the city of Chicago, that, at no far distant day,
this ground will be found to be in the midst of the dense
population of a city? There is especial fitness in preventive
legislation in a case of this kind, owing to the difficulty,
from its peculiar nature, of obviating a nuisance of this
character, after it has once actually become such. In refer-
ence to such, and like, considerations, in view of the proba-
bilities of the future, the legislature may be supposed to have
acted, and made the police regulation in question. Is it for
a court to throw itself across the path of a law-making power,
and annul its enactment made for the welfare of an expected
populous community, because, in the opinion of the court, it
was uncalled for by a sufficient public exigency? In *Coates*
v. *The Mayor, etc., supra,* in passing upon this question, the
court say : "It is of the nature of legislative bodies to judge
of the exigency upon which their laws are founded." This
is believed to be the well settled doctrine upon the subject;
and that whether there was a sufficient occasion for the exer-
cise of the police power in any given case, is not a judicial
question, but a political question, provided the exercise of
the police power be not colorable. It is admitted, that the
police regulation must be such an one in fact, and that the
use of private property is not to be abridged under the pre-
tense only of a police regulation. There would seem to be
enough in matters which are of public notoriety and of judi-
cial cognizance, to manifest that the exercise of the police
power here was not merely colorable, but that there was
occasion for a fair question as to the propriety of making
such a police regulation as was here made. It can not be
essential to the validity of the law, that the act itself should
declare, or that the allegations or proofs in the case should
show, the existence of facts evincing the necessity of the law.

It would present a new phase of judicial controversy, to have an issue of fact in a court upon the necessity of the passage of a law.

The prohibition of this particular use of one's land, then, it is believed, would be valid in the case of a natural person; but the Rose Hill Cemetery Company denies that it is so, in respect to its property, because it has a chartered right to make this particular use of it.

The charter of a private corporation does not imply an undertaking on the part of the State, that in the same way in which their exercise is permissible at first, may the corporators continue to exercise their rights; but on the contrary, the rights and privileges which the charter confers, are only thereby placed upon the same footing with other legal rights and privileges of the citizen in respect to proper rules for their due regulation, protection and enjoyment. Cooley Const. Lim. 577.

The same doctrine has been repeatedly announced in decisions of this court. *G. and C. U. R. R. Co.* v. *Loomis*, 13 Ill. 548; *O. and M. R. R. Co.* v. *McClelland*, 25 id. 140; *G. and C. U. R. R. Co.* v. *Appleby*, 28 id. 290.

"The limit to the exercise of the police power in these cases must be this: the regulations must have reference to the comfort, safety or welfare of society; they must not be in conflict with any of the provisions of the charter; and they must not, under pretense of regulation, take from the corporation any of the essential rights and privileges which the charter confers. In short, they must be police regulations in fact, and not amendments of the charter in curtailment of the corporate franchise." Cooley Lim. 577.

Is the restraint in this case in conflict with, not any literal provision, but with any provision of the charter as rightly understood? All contracts must be understood as made in reference to the possible exercise of the rightful authority of the government, and all property is acquired and held under the implied liability that the use of it may be so regulated

that it shall not be injurious to the rights of the community. *Legal Tender cases*, 12 Wall, 529; *Comm.* v. *Tewksbury*, 11 Metc. 55; *Comm.* v. *Alger*, 7 Cush. 86; *O. and M. R. R. Co.* v. *McClelland*, 25 Ill. 140. In the last cited case, this court, speaking of private corporations, says: " When such bodies accept their charters, it is upon the implied condition that they are to exercise their rights subject to the power of the State to regulate their actions as it may individuals." At the time this company accepted its charter, it had ever been usual for the law-making power to regulate and prohibit the use of ground for the burial of the dead, whenever such use was supposed to be detrimental to the welfare of crowded populations. The privilege of burying the dead in any particular land, as being one to be exercised for profit, is very unlike any ordinary commercial franchise. In view of these circumstances, and the legal principles applicable, may it not be said, that although the charter of this corporation gives to it the right to acquire, and make the specific use of, this land, for the burying of the dead, yet, that the charter was accepted with the implied understanding that the property would be subject to a proper exercise of the police power of the State, and be liable to be restricted in its use for burial purposes, as burial grounds ever had been, whenever, in the progress of population, such restraint might be deemed necessary to the health and welfare of the community.

In *Fletcher* v. *Peck*, 6 Cranch, 87, a grant of land by a State was held by the Supreme Court of the United States to be a contract executed, and to be, equally with an executory contract, within the protection of the clause of the Constitution of the United States, which forbids the States passing any laws violating the obligation of contracts.

Where the State makes an absolute grant of a tract of land to an individual, the grantee has the right, derived from the grant, to use the land for the burial of the dead, to erect upon it wooden buildings, or a powder magazine for the storage of gunpowder, or a slaughter house and carry that on,

or a building for any like noxious use.  Yet the State, in the proper exercise of the police power, might afterwards, without constitutional objection, prohibit all such uses of the land, and it would not be a violation of the contract implied by its grant of the land, that the grantee might make all those uses of the property.   It is difficult to perceive why, in the case of the grant by the State of the right and privilege to make one particular use of land, as, for the burial of the dead, a subsequent restriction by the State of that use, in exercise of the police power, should be any more an impairment of the obligation of a contract, than the like restriction would be in the case of an absolute grant of land by the State, which would carry the right of such particular use, and all other uses, in virtue of the absolute dominion of the land.

That the clause of the constitution declaring, private property shall not be taken for public use without just compensation, is not applicable to laws made in pursuance of the police power prohibiting a particular use of private property, is abundantly settled by authority.   See the authorities *supra*, cited from other States.

The conclusion, then, to which I am led is, that the prohibition by the legislature, in the exercise of the police power, of the use of a portion of the land of the Rose Hill Cemetery Company for burial purposes, was constitutional and valid.

Mr. CHIEF JUSTICE BREESE:   I concur with Mr. Justice Sheldon in the above opinion.

Mr. JUSTICE CRAIG:   I fully concur with Mr. Justice Sheldon in the above opinion.