98:28 L.R.A. 34
29 L.R.A. 25
30 L.R.A. 49
30 L.R.A. 78
31 L.R.A. 52
32 L.R.A. 66
32 L.R.A. 85
33 L.R.A. 31
35 L.R.A. 72
37 L.R.A. 10
39 L.R.A. 12
91 Wis 61
163 Mas 59
167 Mas 9
145 Ind 45

WILLIAM E. RITCHIE

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.*

*Filed at Mt. Vernon March 14, 1895.*

1. CONSTITUTIONAL LAW—*right to labor and employ labor is a property right.*  The right to labor or employ labor, and make contracts in respect thereto, upon such terms as may be agreed upon, is both a liberty and a property right, and is included in the guaranty of section 2, article 2, of the constitution, that no person shall be deprived of life, liberty or property without due process of law.

2. SAME—*right to contract cannot be arbitrarily interfered with.*  While the right to contract may be subject to limitations growing out of the duties which the individual owes to society, the power of the legislature to limit such right must rest upon some reasonable basis, and cannot be arbitrarily exercised.

3. SAME—*statute prohibiting women to work more than eight hours, invalid.*  The act of 1893, prohibiting the employment of females in any factory or workshop for more than eight hours a day, is unconstitutional, as being partial and discriminating in its character, whether applying only to manufacturers of wearing apparel or to manufacturers generally.

4. SAME—*such a statute violates the fundamental rights of the citizen.*  Such a statute is also unconstitutional as an arbitrary restriction upon the fundamental right of the citizen to control his or her own time and faculties, and a substitution of the legislative judgment for that of the employer and employee in a matter about which they are competent to agree with each other.

5. SAME—*imposing unreasonable burden upon citizen.*  The legislature, in imposing an unreasonable burden upon any one citizen or class of citizens, transcends the authority entrusted to it by the constitution, although it imposes the same burden upon all other citizens.

6. SAME—*limits of the police power of the legislature.*  Statutes must not conflict with the constitution, and where their ostensible object is to secure the public comfort, welfare or safety they must appear to be adapted to that end, and cannot invade the rights of persons and property under the guise of a police regulation.

*The following cases, decided at the March term, are controlled by the above case of *Ritchie* v. *The People,* and accordingly the judgment in each case is reversed, with directions to dismiss the prosecution: *William E. Ritchie* v. *The People; Ferdinand Bunte* v. *The People; Joseph E. Tilt* v. *The People; Lee Drom* v. *The People; Louis Eisendrath* v. *The People; Emil Strouss* v. *The People; Lee Drom* v. *The People; Joseph E. Tilt* v. *The People.*

7. SAME—*appropriateness of police measure is a judicial question.* It is the province of the courts to determine whether a statute purporting to be an exercise of the police power of the State, but taking away the property of a citizen or interfering with his personal liberty, is an appropriate measure for the promotion of the comfort, safety and welfare of society.

8. SAME—*act of June 17, 1893, not valid as a police measure.* Said act of June 17, 1893, cannot be sustained as a police regulation on the ground that it is designed to protect women, as sex will not alone justify the exercise of the police power for the purpose of limiting the right of a woman to make contracts.

9. STATUTES—*prohibition of employment operates on both parties.* A statute providing that no female shall be employed in any factory or workshop more than eight hours in any one day or forty-eight hours in any one week, prohibits both the employer and the employee from contracting with each other with reference to the hours of labor.

10. SAME—*matters enumerated in title control general words.* A statute entitled "An act to regulate the manufacture of clothing, wearing apparel *and other articles,*" etc., and providing in its body that no female shall be employed in any factory or workshop more than eight hours a day, will embrace only employment in the manufacture of articles of the same kind as those expressly enumerated.

11. SAME—*containing two subjects, both expressed, void.* A statute containing two distinct subjects, both of which are expressed in the title, is wholly void, under section 13, article 4, of the constitution, which declares that no act shall embrace more than one subject, and that shall be expressed in the title; but if any subject be embraced which is not expressed in the title, the act is void only as to so much thereof as is not so expressed.

12. SAME—*factory inspectors are officers of the government.* Factory inspectors provided for in the act of June 17, 1893, are officers of the government, within the provision of the constitution, which declares that bills making appropriations for the salaries of such officers shall contain no provisions on any other subject.

13. SAME—*act to regulate factories may appropriate for salaries.* A statute regulating factories and providing for the appointment of factory inspectors is not invalidated by the inclusion within it of an appropriation for the salaries of such inspectors, under section 16, article 4, of the constitution, as such appropriation is merely subordinate to the main purpose of regulating factories.

14. SAME—*words of title of statute construed.* The title, "An act to regulate the manufacture of clothing, wearing apparel and other articles in this State. and to provide for the appointment of State inspectors to enforce the same, and to make an appropriation

therefor," does not express two subjects, one of which is an appropriation for salaries, because the words "appropriation therefor," do not necessarily imply that the appropriation is for salaries, but may be for the payment of expenses.

15. SAME—*appropriation for salaries in act of June 17, 1893, invalid.* The appropriation in the act of June 17, 1893, for the salaries of factory inspectors, is a subject not expressed in the title, and is void, under section 13, article 4, of the constitution, declaring that if a subject shall be embraced in an act which is not expressed in the title, the act shall be void as to so much thereof as is not expressed.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. N. C. SEARS, Judge, presiding.

MORAN, KRAUS & MAYER, for plaintiff in error:

The act of June 17, 1893, is unconstitutional, both in form and structure. Const. of 1870, sec. 13, art. 4.

The constitution expressly forbids that any act which appropriates money for the payment of salaries of government officers shall contain any other provision. Const. sec. 16, art. 4.

The inspector, his assistant and deputy, for the payment of whose salaries the appropriation is intended, are "government officers." Const. art. 5, sec. 24; *United States* v. *Maurice,* 2 Brock. 103; *State* v. *Hyde,* 121 Ind. 20 ; *Bunn* v. *People,* 45 Ill. 397; *Wilcox* v. *People,* 90 id. 186; *People* v. *Morgan,* 90 id. 558; Throop on Officers, chap. 1; 19 Am. & Eng. Ency. of Law, 382-390 ; *United States* v. *Perkins,* 116 U. S. 483.

Section 5 of the act places unwarranted restrictions upon the individual's right to contract. *State* v. *Loomis,* 115 Mo. 307; *In re Jacobs,* 98 N. Y. 98; *People* v. *Gillson,* 109 id. 389 ; *Godcharles* v. *Wigeman,* 113 Pa. St. 431; *State* v. *Coal and Coke Co.* 33 W. Va. 188; *State* v. *Goodwill,* id. 179.

This court, however, has committed itself so thoroughly to the doctrine contended for, that it is unnecessary to cite any additional cases outside of this State on the question. *Coal Co.* v. *People,* 147 Ill. 66 ; *Millett* v. *People,* 117 id. 294; *Frorer* v. *People,* 141 id. 171; *Ramsey* v. *People,* 142 id. 380.

The police power, no matter how broad and extensive, is not above the constitution. *In re Jacobs,* 98 N. Y. 108; Tiedeman on Limitation of Police Power, sec. 3, p. 12; *People* v. *Gillson,* 109 N. Y. 389 ; *Civil Rights cases,* 109 U. S. 11; *Mugler* v. *Kansas,* 123 id. 661.

JOHN W. ELA, and ANDREW ALEX. BRUCE, for People:

Even though section 10 is, in whole or in part, in contravention of section 16, article 4, of the constitution, yet it cannot be claimed that on this account the whole act in question should fall.    Cooley's Const. Lim. (3d ed.) 211; *Myers* v. *People,* 67 Ill. 508; *Donnersberger* v. *Prendergast,* 128 id. 234; *Knox County* v. *Davis,* 63 id. 414; *People* v. *Nelson,* 133 id. 591; *Rood* v. *McCargar,* 49 Cal. 117; *Lathrop* v. *Mills,* 19 id. 513 ; *State* v. *Copeland,* 3 R. I. 33.

MAURICE T. MOLONEY, Atto' .ey General, T. J. SCOFIELD, and M. L. NEWELL, of cr .nsel, also for People.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Upon complaint of the factory inspector appointed under the law hereinafter named, a warrant was issued by a justice of the peace of Cook County against plaintiff in error, and, upon his appearance and waiver in writing of jury trial, a trial was had resulting in a finding of guilty, and the imposition of a fine of $5.00, and costs. The complaint charged that, on a certain day in February, 1894, plaintiff in error employed a certain adult female of the age of more than eighteen years to work in a factory for more than eight hours during said day. The plaintiff in error took an appeal to the Criminal Court of Cook County, and waived a jury, and upon trial in that court before the judge without a jury, he was convicted and fined.    The case is brought to this Court by writ of error for the purpose of reviewing such judgment of the Criminal Court.

Upon the trial of the cause the defendant below sub-
mitted written propositions to be held as law in the deci-
sion of the case.   By these propositions the trial court
was asked to hold, that the Act of the Legislature of
Illinois, entitled "An Act to regulate the manufacture
of clothing, wearing apparel, and other articles in this
State, and to provide for the appointment of State in-
spectors to enforce the same, and to make an appropria-
tion therefor," approved June 17, 1893, (Laws of Ill. 1893,
page 99), and each and every section thereof, is illegal
and void, and contrary to and in violation of the consti-
tutions of Illinois and of the United States.   The court
refused all of the propositions so submitted, and excep-
tion was taken by the defendant.

The present prosecution, as is conceded by counsel
on both sides, is for an alleged violation of section 5 of
said Act.   That section is as follows:   "No female shall
be employed in any factory or workshop more than eight
hours in any one day or forty-eight hours in any one
week."

"Factory" or "workshop" is defined in section 7 of the
Act as follows:   "The words, 'manufacturing establish-
ment,' 'factory,' or 'workshop,' wherever used in this act,
shall be construed to mean any place where goods or
products are manufactured or repaired, cleaned or sorted,
in whole or in part, for sale or for wages."

Punishment for violation of the provisions of the Act
is provided for by section 8 thereof in the following
words:   "Any person, firm or corporation, who fails to
comply with any provision of this act, shall be deemed
guilty of a misdemeanor, and on conviction thereof shall
be fined not less than three dollars, nor more than one
hundred dollars for each offense."

The main objection urged against the Act, and that
to which the discussion of counsel on both sides is chiefly
directed, relates to the validity of section 5.   It is con
tended by counsel for plaintiff in error, that that section

is unconstitutional as imposing unwarranted restrictions upon the right to contract. On the other hand, it is claimed by counsel for the People, that the act is a sanitary provision, and justifiable as an exercise of the police power of the State.

Does the provision in question restrict the right to contract? The words, "no female shall be employed," import action on the part of two persons. There must be a person who does the act of employing, and a person who consents to the act of being employed. Webster defines employment as not only "the act of employing," but "also the state of being employed." The prohibition of the statute is, therefore, twofold, first, that no manufacturer, or proprietor of a factory or workshop, shall employ any female therein more than eight hours in one day, and, second, that no female shall consent to be so employed. It thus prohibits employer and employee from uniting their minds, or agreeing, upon any longer service during one day than eight hours. In other words, they are prohibited, the one from contracting to employ, and the other from contracting to be employed, otherwise than as directed. "To be 'employed' in anything means not only the act of doing it, but also to be engaged to do it; to be under contract or orders to do it." (*United States* v. *Morris*, 14 Pet. 464). Hence, a direction, that a person shall not be employed more than a specified number of hours in one day, is at the same time a direction, that such person shall not be under contract to work for more than a specified number of hours in one day. It follows, that section 5 does limit and restrict the right of the manufacturer and his employee to contract with each other in reference to the hours of labor.

Is the restriction thus imposed an infringement upon the constitutional rights of the manufacturer and the employee? Section 2 of article 2 of the constitution of Illinois provides, that "no person shall be deprived of life, liberty or property, without due process of law."

A number of cases have arisen within recent years in which the courts have had occasion to consider this provision, or one similar to it, and its meaning has been quite clearly defined. The privilege of contracting is both a liberty and property right. (*Frorer* v. *The People*, 141 Ill. 171). Liberty includes the right to acquire property, and that means and includes the right to make and enforce contracts. (*The State* v. *Loomis*, 115 Mo. 307). The right to use, buy and sell property and contract in respect thereto is protected by the constitution. Labor is property, and the laborer has the same right to sell his labor, and to contract with reference thereto, as has any other property owner. In this country the legislature has no power to prevent persons who are *sui juris* from making their own contracts, nor can it interfere with the freedom of contract between the workman and the employer. The right to labor or employ labor, and make contracts in respect thereto upon such terms as may be agreed upon between the parties, is included in the constitutional guaranty above quoted. (*State* v. *Goodwill*, 33 W. Va. 179; *Godcharles* v. *Wigeman*, 113 Pa. St. 431; *Braceville Coal Co.* v. *The People*, 147 Ill. 66). The protection of property is one of the objects for which free governments are instituted among men. (Const. of Ill. art. 2, sec. 1). The right to acquire, possess and protect property includes the right to make reasonable contracts. (*Commonwealth* v. *Perry*, 155 Mass. 117). And when an owner is deprived of one of the attributes of property, like the right to make contracts, he is deprived of his property within the meaning of the constitution. (*Matter of Application of Jacobs*, 98 N. Y. 98). The fundamental rights of Englishmen, brought to this country by its o. inal settlers and wrested from time to time in the progre. f history from the sovereigns of the English nation, hav een reduced by Blackstone to three principal or primary articles: "the right of personal security, the right of personal liberty, and the right of private property." (1 Blacks. Com.

marg. page 129). The right to contract is the only way by which a person can rightfully acquire property by his own labor. "Of all the 'rights of persons' it is the most essential to human happiness." (*Leep* v. *St. L.*, *I. M. & S. Ry. Co.* 58 Ark. 407).

This right to contract, which is thus included in the fundamental rights of liberty and property, cannot be taken away "without due process of law." The words: "due process of law:" have been held to be synonymous with the words : "law of the land." (*The State* v. *Loomis, supra; Frorer* v. *The People, supra*). Blackstone says : "The third absolute right, inherent in every Englishman, is that of property, which consists in the free use, enjoyment and disposal of all his acquisitions, without any control or diminution, save only by the laws of the land." (1 Black. Com. page 138 ; *Ex parte Jacobs,* 98 N. Y. 98). The "law of the land" is "general public law binding upon all the members of the community, under all circumstances, and not partial or private laws, affecting the rights of private individuals or classes of individuals." (*Millett* v. *The People,* 117 Ill. 294). The "law of the land" is the opposite of "arbitrary, unequal and partial legislation." (*The State* v. *Loomis, supra*). The legislature has no right to deprive one class of persons of privileges allowed to other persons under like conditions. The man, who is forbidden to acquire and enjoy property in the same manner in which the rest of the community is permitted to acquire and enjoy it, is deprived of liberty in particulars of primary importance to his pursuit of happiness. If one man is denied the right to contract as he has hitherto done under the law, and as others are still allowed to do by the law, he is deprived of both liberty and property to the extent to which he is thus deprived of such right. In line with these principles, it has been held that it is not competent, under the constitution, for the legislature to single out owners and employers of a particular class, and provide that they shall bear burdens not imposed on

other owners of property or employers of labor, and pro-
hibit them from making contracts which other owners or
employers are permitted to make. (*Millett* v. *The People,
supra; Frorer* v. *The People, supra; Ramsey* v. *The People,*
142 Ill. 380).

We are not unmindful, that the right to contract may
be subject to limitations growing out of the duties which
the individual owes to society, to the public or to the
government. These limitations are sometimes imposed
by the obligation to so use one's own as not to injure
another, by the character of property as affected with a
public interest or devoted to a public use, by the de-
mands of public policy or the necessity of protecting the
public from fraud or injury, by the want of capacity, by
the needs of the necessitous borrower as against the
demands of the extortionate lender. But the power of the
legislature to thus limit the right to contract must rest
upon some reasonable basis, and cannot be arbitrarily
exercised. It has been said, that such power is based in
every case on some condition, and not on the absolute
right to control. Where legislative enactments, which
operate upon classes of individuals only, have been held
to be valid, it has been where the classification was rea-
sonable, and not arbitrary. (*Leep* v. *St. L., I. M. & S. Ry.
Co. supra; The State* v. *Loomis, supra*).

Applying these principles to the consideration of sec-
tion 5, we are led irresistibly to the conclusion, that it
is an unconstitutional and void enactment. While some
of the language of the Act is broad enough to embrace
within its terms the manufacture of all kinds of goods
or products, other provisions are limited to the manu-
facture of "coats, vests, trousers, knee-pants, overalls,
cloaks, shirts, ladies' waists, purses, feathers, artificial
flowers or cigars, or any wearing apparel of any kind
whatsoever." The Act is entitled "An Act to regulate
the manufacture of clothing, wearing apparel and other
articles," etc. Under the rule of construction heretofore

laid down by this Court, that general and specific words, which are capable of an analogous meaning, being associated together, take color from each other, so that the general words are restricted to a sense analogous to the less general, it would seem that the general words: "and other articles:" should be restricted to a meaning analogous to the meaning of the words : "clothing, wearing apparel:" and, consequently, that they would only embrace articles of the same kind as those expressly enumerated. (*First Nat. Bank of Joliet* v. *Adam*, 138 Ill. 483 ; *Misch* v. *Russell*, 136 id. 22). But whether this is so, or not, we are inclined to regard the Act as one which is partial and discriminating in its character. If it be construed as applying only to manufacturers of clothing, wearing apparel and articles of a similar nature, we can see no reasonable ground for prohibiting such manufacturers and their employees from contracting for more than eight hours of work in one day, while other manufacturers and their employees are not forbidden to so contract. If the Act be construed as applying to manufacturers of all kinds of products, there is no good reason why the prohibition should be directed against manufacturers and their employees, and not against merchants, or builders, or contractors, or carriers, or farmers, or persons engaged in other branches of industry, and their employees therein. . Women, employed by manufacturers, are forbidden by section 5 to make contracts to labor longer than eight hours in a day, while women employed as saleswomen in stores, or as domestic servants, or as book-keepers, or . stenographers, or type-writers, or in laundries, or other occupations not embraced under the head of manufacturing, are at liberty to contract for as many hours of labor in a day as they choose. The manner, in which the section thus discriminates against one class of employers and employees and in favor of all others, places it in opposition to the constitutional guaranties hereinbefore discussed, and so renders it invalid.

But aside from its partial and discriminating character, this enactment is a purely arbitrary restriction upon the fundamental right of the citizen to control his or her own time and faculties. It substitutes the judgment of the legislature for the judgment of the employer and employee in a matter about which they are competent to agree with each other. It assumes to dictate to what extent the capacity to labor may be exercised by the employee, and takes away the right of private judgment as to the amount and duration of the labor to be put forth in a specified period. When the legislature thus undertakes to impose an unreasonable and unnecessary burden upon any one citizen or class of citizens, it transcends the authority entrusted to it by the constitution, even though it imposes the same burden upon all other citizens or classes of citizens. General laws may be as tyrannical as partial laws. A distinguished writer upon constitutional limitations has said, that general rules may sometimes be as obnoxious as special, if they operate to deprive individual citizens of vested rights, and that, while every man has a right to require that his own controversies shall be judged by the same rules which are applied in the controversies of his neighbors, the whole community is also entitled, at all times, to demand the protection of the ancient principles which shield private rights against arbitrary interference, even though such interference may be under a rule impartial in its operation. (Cooley on Cons. Lim.—5 ed.—top page 434, marg. page 355 ; *Bank of Columbia* v. *Okely,* 4 Wheat. 235). Section 1 of article 2 of the constitution of Illinois provides as follows : "All men are by nature free and independent, and have certain inherent and inalienable rights ; among these are life, liberty and the pursuit of happiness. To secure these rights and the protection of property, governments are instituted among men, deriving their just powers from the consent of the governed." Liberty, as has already been stated, includes the right

to make contracts, as well with reference to the amount and duration of labor to be performed, as concerning any other lawful matter. Hence, the right to make contracts is an inherent and inalienable one, and any attempt to unreasonably abridge it is opposed to the constitution. As was aptly said in *Leep* v. *St. L., I. M. & S. Ry. Co. supra:* "Where the subject of contract is purely and exclusively private, unaffected by any public interest or duty to person, to society or government, and the parties are capable of contracting, there is no condition existing upon which the legislature can interfere for the purpose of prohibiting the contract, or controlling the terms thereof."

An instance of the care, with which this right to contract has been guarded, may be found in chapter 48 of the Revised Statutes of this State, where an Act, passed in 1867, makes eight hours of labor in certain employments a legal day's work, "*where there is no special contract or agreement to the contrary;*" and the second section of which Act contains the following provision: "nor shall any person be prevented by anything herein contained from working as many hours overtime or extra hours as he or she may agree."

In *Ex parte Kuback*, 85 Cal. 274, an ordinance of the city of Los Angeles, making it a misdemeanor for any contractor to employ any person to work more than eight hours a day where the work was to be performed under any contract with the city, was held to be unconstitutional and void, the Supreme Court of California there saying: "It is claimed in support of the petition that this ordinance was unconstitutional and void. We think this objection is well taken. It is simply an attempt to prevent certain parties from employing others in a lawful business and paying them for their services, and is a direct infringement of the right of such persons to make and enforce their contracts. If the services to be performed were unlawful or against public policy, or the employment were such as might be unfit for certain per-

sons, as, for example, females or infants, the ordinance might be upheld as a sanitary or police regulation; but we cannot conceive of any theory upon which a city could be justified in making it a misdemeanor for one of its citizens to contract with another for services to be rendered, because the contract is that he shall work more than a limited number of hours per day." In the case of *Low* v. *Rees Printing Co.* 41 Neb. 127, an Act of the Legislature of that State, providing that eight hours shall constitute a legal day's work for all classes of mechanics, servants and laborers throughout the State, excepting those engaged in farm and domestic labor, and making violation of the provision a misdemeanor, was held to be unconstitutional and void, both as being special legislation, and as attempting to prevent persons, legally competent to enter into contracts, from making their own contracts.

But it is claimed on behalf of defendant in error, that this section can be sustained as an exercise of the police power of the State. The police power of the State is that power which enables it to promote the health, comfort, safety and welfare of society. It is very broad and far reaching, but is not without its limitations. Legislative acts passed in pursuance of it must not be in conflict with the constitution, and must have some relation to the ends sought to be accomplished; that is to say, to the comfort, welfare or safety of society. Where the ostensible object of an enactment is to secure the public comfort, welfare or safety, it must appear to be adapted to that end; it cannot invade the rights of person and property under the guise of a mere police regulation, when it is not such in fact; and where such an act takes away the property of a citizen or interferes with his personal liberty, it is the province of the Courts to determine whether it is really an appropriate measure for the promotion of the comfort, safety and welfare of society.

(*Lake View* v. *Rosehill Cem. Co.* 70 Ill. 191; *In re Jacobs*, 98 N. Y. 98; *The People* v. *Gillson*, 109 id. 389).

There is nothing in the title of the Act of 1893 to indicate that it is a sanitary measure. The first three sections contain provisions for keeping workshops in a cleanly state and for inspection to ascertain whether they are so kept. But there is nothing in the nature of the employment contemplated by the Act which is in itself unhealthy, or unlawful, or injurious to the public morals or welfare. Laws restraining the sale and use of opium and intoxicating liquor have been sustained as valid under the police power. (*Ah Lim* v. *Territory*, 1 Wash. 156; *Mugler* v. *Kansas*, 123 U. S. 623). Undoubtedly, the public health, welfare and safety may be endangered by the general use of opium and intoxicating drinks. But it cannot be said that the same consequences are likely to flow from the manufacture of clothing, wearing apparel and other similar articles. "The manufacture of cloth is an important industry, essential to the welfare of the community." (*Commonwealth* v. *Perry, supra*). We are not aware that the preparation and manufacture of tobacco into cigars is dangerous to the public health. (*In re Jacobs, supra*).

It is not the nature of the things done, but the sex of the persons doing them, which is made the basis of the claim that the Act is a measure for the promotion of the public health. It is sought to sustain the Act as an exercise of the police power upon the alleged ground, that it is designed to protect woman on account of her sex and physique. It will not be denied, that woman is entitled to the same rights, under the constitution, to make contracts with reference to her labor as are secured thereby to men. The first section of the fourteenth amendment to the constitution of the United States provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive *any person* of

life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law." It has been held that a woman is both a "citizen" and a "person" within the meaning of this section. (*Minor* v. *Happersett*, 21 Wall. 162). The privileges and immunities here referred to are, in general, "protection by the government, with the right to acquire and possess property of every kind, and to pursue and obtain happiness and safety, subject, nevertheless, to such restraints as the government may prescribe for the general good of the whole." (*Slaughter House cases*, 16 Wall. 36). As a citizen, woman has the right to acquire and possess property of every kind. As a "person," she has the right to claim the benefit of the constitutional provision that she shall not be deprived of life, liberty or property without due process of law. Involved in these rights thus guaranteed to her is the right to make and enforce contracts. The law accords to her, as to every other citizen, the natural right to gain a livelihood by intelligence, honesty and industry in the arts, the sciences, the professions or other vocations. Before the law, her right to a choice of vocations cannot be said to be denied or abridged on account of sex. (*In re Leach*, 134 Ind. 665).

The tendency of legislation in this State has been to recognize the rights of woman in the particulars here specified. The Act of 1867, as above quoted, by the use of the words, "he or she," plainly declares that no woman shall be prevented by anything therein contained from working as many hours overtime or extra hours as she may agree ; and thereby recognizes her right to contract for more than eight hours of work in one day. An Act approved March 22, 1872, entitled "An Act to secure freedom in the selection of an occupation," etc., provides that "no person shall be precluded or debarred from any occupation, profession or employment (except military) on account of sex." (1 Starr & Cur. Ann. Stat. page 1056).

The Married Woman's Act of 1874 authorizes a married woman to sue and be sued without joining her husband, and provides that contracts may be made and liabilities incurred by her and enforced against her to the same extent and in the same manner as if she were unmarried, and that she may receive, use and possess her own earnings, and sue for the same in her own name, free from the interference of her husband, or his creditors. (Rev. Stat. Ill. chap. 68, secs. 1, 6 and 7).

Section 5 of the Act of 1893 is broad enough to include married women and adult single women, as well as minors. As a general thing, it is the province of the legislature to determine what regulations are necessary to protect the public health and secure the public safety and welfare. But inasmuch as sex is no bar, under the constitution and the law, to the endowment of woman with the fundamental and inalienable rights of liberty and property which include the right to make her own contracts, the mere fact of sex will not justify the legislature in putting forth the police power of the State for the purpose of limiting her exercise of those rights, unless the courts are able to see, that there is some fair, just and reasonable connection between such limitation and the public health, safety or welfare proposed to be secured by it. (*The People* v. *Gillson, supra*).

Counsel for the people refer to statements in the text books, recognizing the propriety of regulations, which forbid women to engage in certain kinds of work altogether. Thus, it is said in Cooley on Constitutional Limitations, that "some employments * * * may be admissible for males and improper for females, and regulations, recognizing the impropriety and forbidding women engaging in them, would be open to no reasonable objection." (5th ed. page 745). Attention is also called to the above mentioned Act of March 22, 1872, which makes an exception of military service, and provides that nothing in the Act shall be construed as requiring any female to

155—8

work on streets, or roads, or serve on juries. But, without stopping to comment upon measures of this character, it is sufficient to say that what is said in reference to them has no application to the Act of 1893. That Act is not based upon the theory, that the manufacture of clothing, wearing apparel and other articles is an improper occupation for women to be engaged in. It does not inhibit their employment in factories or workshops. On the contrary, it recognizes such places as proper for them to work in by permitting their labor therein during eight hours of each day. The question here is not whether a particular employment is a proper one for the use of female labor, but the question is whether, in an employment which is conceded to be lawful in itself and suitable for woman to engage in, she shall be deprived of the right to determine for herself how many hours she can and may work during each day. There is no reasonable ground—at least none which has been made manifest to us in the arguments of counsel—for fixing upon eight hours in one day as the limit within which woman can work without injury to her physique, and beyond which, if she work, injury will necessarily follow. But the police power of the State can only be permitted to limit or abridge such a fundamental right as the right to make contracts, when the exercise of such power is necessary to promote the health, comfort, welfare or safety of society or the public; and it is questionable whether it can be exercised to prevent injury to the individual engaged in a particular calling. The Court of Appeals of New York, in passing upon the validity of an Act "to improve the public health by prohibiting the manufacture of cigars and preparation of tobacco in any form in tenement houses," etc., has said: "To justify this law it would not be sufficient that the use of tobacco may be injurious to some persons, or that its manipulation may be injurious to those who are engaged in its preparation and manufacture; but it would have to be injurious to the public

health." (*In re Jacobs, supra*). Tiedeman, in his work on Limitations of Police Power, says: "In so far as the employment of a certain class in a particular occupation may threaten or inflict damage upon the public or third persons, there can be no doubt as to the constitutionality of any statute which prohibits their prosecution of that trade. But it is questionable, except in the case of minors, whether the prohibition can rest upon the claim that the employment will prove hurtful to them.   *   *   * There can be no more justification for the prohibition of the prosecution of certain callings by women, because the employment will prove hurtful to themselves, than it would be for the State to prohibit men from working in the manufacture of white lead because they are apt to contract lead poisoning, or to prohibit occupation in certain parts of iron smelting works, because the lives of the men so engaged are materially shortened." (Sec. 86).

We are also referred to statements made in some of the text books to the effect, that the legislature may limit the hours of labor of women in manufacturing establishments. (Parker & Worthington's Public Health and Safety, sec. 260; 18 Am. & Eng. Enc. of Law, page 753). These statements appear to be based entirely upon the decision of the Supreme Court of Massachusetts in *Commonwealth* v. *Hamilton Manf. Co.* 120 Mass. 385. There it was held, that an Act, providing that no woman over the age of eighteen years should be employed by any person, firm or corporation in any manufacturing establishment more than ten hours in any one day, was valid. But, under the constitution of Massachusetts (Art. 4, sec. 1), the legislature has power to ordain all manner of wholesome and reasonable statutes, with or without penalties, not repugnant to the constitution, "as they shall judge to be for the good and welfare of the commonwealth, and for the governing and ordering thereof, and of the subjects of the same." The decision referred to was evidently made in view of the large discretion so

vested in the legislative branch of the government; and
it was said, that the act might be maintained as a health
or police regulation, because the legislature deemed the
employment of manufacturing dangerous to health. But
the Massachusetts case is not in line with the current of
authority, as it assumes that the police power is prac-
tically without limitation. As has already been stated,
the legislature cannot so use that power as to invade the
fundamental rights of the citizen, and it is for the courts
to decide whether a measure, which assumes to have
been passed in the interest of the public health, really
"relates to and is convenient and appropriate to promote
the public health." (*In re Jacobs, supra; The People* v. *Gill-
son, supra*). We said in *Lake View* v. *Rosehill Cem. Co.* 70
Ill. 191: "As a general proposition, it may be stated it
is the province of the law-making power to determine
when the exigency exists, calling into exercise this power.
What are the subjects of its exercise is clearly a judicial
question." The reasoning of the opinion in the Massa-
chusetts case cited does not seem to us to be sound. It
assumes, that there is no infringement upon the employ-
er's right to contract, because he may employ as many
persons or as much labor as he chooses, nor upon the
employee's right to contract, because she may labor as
many hours as she chooses in some other occupation
than that specified in the statute. This is a begging of
the question. The right to contract would be valueless,
if it could not be exercised with reference to the particu-
lar subject-matter in hand. If its exercise is forbidden
between two persons competent to contract and con-
cerning a lawful subject of contract, it is none the less
abridged because other persons may be permitted to con-
tract, or because the same persons may be at liberty to
contract about some other matter.

We cannot more appropriately close the discussion of
this branch of the case than by quoting, and adopting as
our own, the following words of the New York Court of

Appeals in *In re Jacobs, supra:* "When a health law is challenged in the courts as unconstitutional on the ground that it arbitrarily interferes with personal liberty and private property without due process of law, the courts must be able to see that it has at least in fact some relation to the public health, that the public health is the end actually aimed at, and that it is appropriate and adapted to that end.   This we have not been able to see in this law (section), and we must, therefore, pronounce it unconstitutional and void.   In reaching this conclusion, we have not been unmindful that the power which courts possess to condemn legislative acts which are in conflict with the Supreme law should be exercised with great caution and even with reluctance.   But as said by Chancellor Kent (1 Com. 450): 'It is only by the free exercise of this power that courts of justice are enabled to repel assaults and to protect every part of the government and every member of the community from undue and destructive innovations upon their charter rights.'"

It is furthermore contended by plaintiff in error, that the Act of 1893 is void upon the alleged ground that it contains two distinct subjects, and that both of these are expressed in the title.   The two constitutional provisions, which are invoked in favor of this position, are sections 13 and 16 of article 4.   Section 13 is as follows: "No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title.   But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."   Section 16 is as follows: "The General Assembly shall make no appropriation of money out of the treasury in any private law.   Bills making appropriations for the pay of members and officers of the General Assembly, and for the salaries of the officers of the government, shall contain no provision on any other subject."

The two subjects, alleged to be contained in the Act and expressed in its title, are, *first*, the general subject of regulating the manufacture of clothing, wearing apparel and other articles, including the requirements as to cleanliness, inspection, employment of minors, keeping of registers of names, ages, residences, etc., appointment of inspectors, fixing their salaries, duties, terms of office, etc., and, *second*, the appropriation of money for the payment of the salaries of the inspectors. Section 9 of the Act provides that "the Governor shall, upon the taking effect of this act, appoint a factory inspector, at a salary of $1500 per annum, an assistant factory inspector, at a salary of $1000 per annum, and ten deputy factory inspectors, of whom five shall be women, at a salary of $750 per annum each. The term of office of the factory inspector shall be four years, and the assistant factory inspector and the deputy factory inspectors shall hold office during good behavior. Said inspector, assistant inspector and deputy inspectors shall be empowered to visit and inspect, at all reasonable hours, and as often as practicable, the workshops, factories and manufacturing establishments in this State where the manufacture of goods is carried on, and the inspectors shall report, in writing, to the Governor, on the fifteenth day of December, annually, the result of their inspections and investigation, together with such other information and recommendations as they may deem proper; and said inspectors shall make a special investigation into alleged abuses in any of such workshops whenever the Governor shall so direct, and report the result of the same to the Governor. It shall also be the duty of said inspector to enforce the provisions of this act, and to prosecute all violations of the same before any magistrate or any court of competent jurisdiction in the State." Section 10 provides "that the following named sums, or so much thereof as may be necessary, respectively, for the purposes hereinafter named, be and are hereby appropriated: First,

$20,000 for the salaries of inspector, assistant inspector and the ten deputy factory inspectors, as hereinbefore provided; second, the sum of $8000 to defray traveling expenses and other necessary expenses incurred by said inspector, assistant factory inspector or deputy inspectors while engaged in the performance of their duties, not to exceed $4000 in any one year."

The general rule is that, where an Act includes two distinct subjects and both are expressed in the title, the whole Act must be treated as void under such a provision as section 13, because it is impossible to choose between the two subjects, and hold the Act valid as to one and void as to the other. (Cooley on Const. Lim. 5th ed. top page 178; Sutherland on Stat. Cons. sec. 103). We are inclined to think that the *body* of the Act does embrace two subjects. The factory inspectors, provided for in the Act, must be regarded as State officers, or officers of the government.

Section 24 of article 5 of the constitution declares, that "an office is a public position, created by the constitution or law, continuing during the pleasure of the appointing power, or for a fixed time, with a successor elected or appointed." The *duties* of the inspectors are continuing, and are prescribed by statute, and not by contract, and some portion of the functions of government are committed to their charge. They seem to come within the definition of "officers," as given in the constitution, and as laid down in the decisions of this Court. (*Bunn* v. *The People*, 45 Ill. 397; *Wilcox* v. *The People*, 90 id. 186; *The People* v. *Morgan*, 90 id. 558).

The manifest intention of section 16 was to make the subject of appropriations for the pay of the members and officers of the legislature, and for the salaries of the officers of the government, a separate and distinct subject for legislative action. In a bill making appropriations for those objects, every provision is unconstitutional which proposes to do anything besides making such ap-

propriations. (14 Fla. 284). If the Act of 1893 was strictly a general appropriation bill to pay the legislature and for the salaries of the officers of the government, everything else in it would be void. But it is not such a bill. Certainly its title does not indicate that it is such a bill. Its body contains a provision appropriating money for the payment of the factory inspector, and his or her deputy and assistants. This provision is merely subordinate and subsidiary to the main purpose of regulating the manufacture of clothing, wearing apparel and other articles.

In order to make the Act void under the constitutional prohibition contained in section 13, the two subjects must not only be contained in the body of the Act, but must also be expressed in its title. We do not think that we would be justified in holding that two subjects or objects are expressed in the title to this Act of 1893. Courts always give a liberal and not a hypercritical interpretation to this restriction. All matters are properly included in the Act, which are germane to the title. The constitution is obeyed, if all the provisions relate to the one subject indicated in the title, and are parts of it, or incident to it, or reasonably connected with it, or in some reasonable sense auxiliary to the object in view. It is not required, that the subject of the bill shall be specifically and exactly expressed in the title, or that the title should be an index of the details of the Act. Where there is doubt as to whether the subject is clearly expressed in the title, the doubt should be resolved in favor of the validity of the Act. An Act to incorporate a city may contain provisions for the raising of revenue for its government. An Act "concerning drainage" may include assessments upon lands benefited to pay the expense. (Suth. on Stat. Cons. secs. 82, 85, 86, 88, 92 to 96; *Johnson* v. *The People*, 83 Ill. 431).

Here, the main subject or purpose expressed in the title is the regulation of the manufacture of the articles

therein named.   The appointment of inspectors for the enforcement of such regulation, and the making of "an appropriation therefor," are germane to the main subject, and a part of it.   They merely amplify the subject, and are incidental and auxiliary to the object contemplated by it.   The title of the Act not only does not mention the pay of the legislature and the salaries of the government officers, but it does not mention the salaries of the inspectors.    The word, "therefor," does not necessarily imply that the appropriation is for the salaries of the inspectors.   *Non constat*, so far as the title expresses to the contrary, that the inspectors were not to act without salaries.   The title can well be interpreted as referring to the expenses of enforcing the regulation provided for, such as traveling expenses, the expenses attendant upon gathering information, and making investigations, and reporting to the governor, and prosecuting violations of the Act by employing counsel, or otherwise.   It does not follow, that "a specific provision for the payment of expenses, necessary, proper, incidental, or growing out of a law itself, or which may be deemed needful in carrying it or its subject into execution, would not be valid, because such a provision, being matter properly connected with the subject of the law as expressed in the title, would not be prohibited by the title."   (14 Fla. 287).

If it were not for section 16, it might be said that the salaries of the inspectors were a necessary expense incidental to the execution of the law, and properly included in the title, though not expressly named therein.   But sections 16 and 13 are in the same article of the constitution, and both use the word "subject," which evidently has the same meaning in each.   The question, therefore, whether the matter of the salaries of State officers is an independent subject is not a matter of construction, because the constitution itself, by the language used in section 16, defines and sets apart appropriations for such salaries as a subject, which is distinct and separate from

all others, and cannot be included in any other. The design of that section was to enable the people to see clearly what and how much compensation their servants are receiving, without being confused by a commingling of outside matters with appropriations therefor.

We are inclined to think, that the second clause of section 10 of the Act, appropriating "twenty thousand dollars for the salaries of inspector, assistant inspector and ten deputy factory inspectors, as hereinbefore provided," is a subject embraced in the Act, which is not expressed in the title, and must therefore be regarded as void under the provision in the second sentence of section 13. It is true, that the clause only makes an appropriation for the salaries of one class of State officers, and is not a general appropriation for the pay of the legislature and for the salaries of all the officers of the government. But it was the intention of section 16, that the salary of each of such officers, as well as of all of them collectively, should be provided for by appropriations in a separate bill, standing by itself and apart from any provision on any other subject. The mandate of the constitution, as embodied in that section, cannot be violated by passing separate bills making separate and distinct appropriations for the salaries of particular officers of the government, or of particular classes of government officers, and embodying in such separate bills provisions on other subjects than the appropriations so made.

Our conclusion is, that section 5 of the Act of 1893, and the first clause of section 10 thereof, are void and unconstitutional for the reasons here stated. These are the only portions of the Act, which have been attacked in the argument of counsel. No reason has been pointed out why they are not distinct and separable from the balance of the Act. The rule is that, where a part of a statute is unconstitutional, the remainder will not be declared to be unconstitutional also, if the two are distinct and separable so that the latter may stand, though

the former becomes of no effect. (*C., B. & Q. R. R. Co.* v. *Jones*, 149 Ill. 361). We do not wish to be understood by anything herein said as holding that section five (5) would be invalid if it was limited in its terms to females who are minors.

The judgment of the Criminal Court of Cook County is reversed, and the cause is remanded to that Court with directions to dismiss the prosecution.

*Reversed and remanded.*