THE CITY OF CHICAGO *et al.*

*v.*

THE GUNNING SYSTEM.

*Opinion filed April 17, 1905.*

1. MUNICIPAL CORPORATIONS—*city's police power not limited to regulation of police force.* Paragraph 66 of section 1 of article 5 of the City and Village act, conferring power "to regulate the police of the city or village and pass and enforce all necessary police ordinances," is not limited to the regulation of a police force, but embraces the subject matter of police regulation under the general police power of the State.

2. SAME—*police power defined.* The police power is that inherent or plenary power which justifies the prohibition of all things hurtful to the comfort, safety and welfare of society, and may be termed "the law of overruling necessity."

3. SAME—*city has power to regulate bill-boards in corporate limits.* Under paragraph 66 of section 1 of article 5 of the City and Village act, relating to police power, and under paragraph 75 of said section, relating to nuisances, a city has power to enact and enforce reasonable regulations respecting bill-boards within corporate limits, whether upon public streets or private property.

4. SAME—*when provisions of ordinance regulating bill-boards are unreasonable.* Provisions of a bill-board ordinance requiring all bill-boards to be of non-combustible material, not exceeding one hundred square feet in area and not located nearer than twenty-five feet back of the front line of the lot; that they shall not exceed ten feet in height above the adjoining streets, the base-boards to be not less than three feet above the level of the street or surface of the ground, and that no board shall be erected within five feet of any other, are unreasonable as applied to the whole city without limitation as to any particular district.

5. SAME—*when evidence should show ordinance to be reasonable.* A provision of a bill-board ordinance prohibiting the erection of any bill-board upon any boulevard or pleasure drive, or in any street where three-fourths of the buildings are residences, without the consent, in writing, of at least three-fourths of the residents and property owners on both sides of the street in the block where the board is to be erected, must be held arbitrary and void if there is no evidence in the record showing the reasonableness of the provision.

6. SAME—*when provision of bill-board ordinance is arbitrary.*
A provision of an ordinance requiring owners of bill-boards pre-
viously erected which exceed the maximum size prescribed, to pay
an annual license fee of fifty·cents a square foot, in default of which
the boards shall be torn down, will be held oppressive' and void as
to an owner who had erected boards in compliance with the then
existing ordinances, where the evidence shows its enforcement will
be prohibitive of such owner's business.

APPEAL, from the Appellate Court for the First District;—
heard in that court on appeal from the Superior Court of
Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

Appellee, the Gunning System, filed its bill in the supe-
rior court of Cook county in which it sought to have declared
null and void two ordinances of the city of Chicago, and also
praying for an injunction restraining appellants from in any
way interfering with its business.

The bill alleges that the complainant is engaged in the
advertising business in the city of Chicago and has a large
number of bulletin boards upon which are painted advertis-
ing signs, about four hundred of which are maintained on
vacant property and all built and constructed in a safe and
substantial manner, so that they do not menace or endanger
the safety of persons whose business may require their pas-
sage in close proximity to them; that none of them were
constructed upon any public streets but wholly upon lots
adjoining public streets, and that nothing was painted upon
them which could in any manner injure the morals of any
person or citizen; that it had expended large sums of money
procuring leases from the owners of the lots upon which the
said bulletins are situated, which leases run from one to five
years, and it has expended large sums of money in erecting
boards thereon; that it has made numerous contracts with
customers, running from three months to a year, which ob-
ligate it to maintain upon the said boards the advertising of
such customers, and its income is derived from the payments
made by such customers for maintaining such advertise-

ments. It then alleges that on June 29, 1900, the city council of the city of Chicago passed an ordinance as follows:

"Sec. 1. All signs or bill-boards, other than those painted or erected upon any building, shall be limited in their superficial area to one hundred (100) square feet, and shall be constructed of sheet or galvanized iron, or some equally incombustible material, and such signs or bill-boards shall not be located nearer than twenty-five (25) feet back of the front line of the lot whereon the same is to be erected: *Pro-* *vided,* that signs not to exceed twelve (12) square feet each may be made of wood, but such signs shall in all respects comply with the above section.

"Sec. 2. No such sign or bill-board shall be constructed at a greater height than ten (10) feet above the level of adjoining streets, and the base of the sign or bill-board shall be in all cases at least three (3) feet above the level of adjoining streets. In case the grade of adjoining streets has not been established, no sign or bill-board shall be constructed at greater height than ten (10) feet above the surface of the ground.

"Sec. 3. No such sign or bill-board shall be erected within five (5) feet of any other sign or bill-board, and each such sign or bill-board shall have independent support.

"Sec. 4. No such sign or bill-board shall be erected upon or along any boulevard or pleasure driveway, or in any streets where three-quarters (¾) of the buildings in such street are devoted to residence purposes only, unless the person or persons desiring to erect such sign or bill-board shall first have secured the consent, in writing, of three-quarters (¾) of the residence and property owners on both sides of the street in the block where it is desired to erect such sign or bill-board.

"Sec. 5. All owners of signs or bill-boards erected before the passage of this ordinance, which signs or bill-boards have a superficial area exceeding one hundred (100) square feet or which are of greater height than ten (10) feet above

the surface of the ground, (other than such signs or bill-boards as are painted or erected upon buildings,) shall pay an annual license on the first day of July of each year at the rate of fifty (50) cents per square foot, and in case of failure to pay such annual license within thirty (30) days of July 1 of each year, such signs or bill-boards shall be torn down by the fire department, under the direction of the commissioner of buildings.

"Sec. 6. Any person, firm, company or corporation who violates, disobeys, omits, neglects or refuses to comply with, or who resists or opposes, the execution of any of the provisions of this ordinance shall be subject to a fine of not less than five ($5) dollars per day nor more than fifty ($50) dollars per day; and every such person, firm, company or corporation shall be deemed guilty of a separate offense for every day such violation, disobedience, omission, neglect or refusal shall continue, and shall be subject to the penalty imposed by this section for each and every offense; and any builder or contractor who shall construct any sign or bill-board on vacant property in violation of any of the provisions of this ordinance shall be subject to a like fine.

"Sec. 7. This ordinance shall be in force from and after its passage."

It is further alleged that said ordinance is wholly void for the reason that the city council is not given power to regulate or license signs or bill-boards or the owners of the same; that the ordinance is unreasonable and oppressive and does not have uniform operation as to the class upon which it operates; that it deprives the owners of the lots adjoining the streets of the right to use twenty-five feet of their lots without compensation; that it attempts to prescribe the size of certain bill-boards which may be maintained without a license, and prescribes an annual license upon bill-boards exceeding a certain size which may have been erected prior to the ordinance; that it prescribes that certain boards exceeding a size specified shall pay a license or be torn down.

The bill further alleges that in 1896 the city council passed a resolution providing that all persons erecting bill-boards for advertising purposes should pay a license of one dollar for every twenty-five feet of frontage of such boards, and that under this resolution complainant had paid the city about $1500 for the privilege of erecting its boards within the limits of said city; that said payments continued to be exacted from complainant from March, 1896, to June, 1900, and its boards were erected under such permit; that it maintains about 420,000 square feet of bill-boards in the city, and its gross income therefrom is about $120,000 per annum; that the average size of said boards is fifty by twelve feet, making six hundred square feet per board, and that under section 5 of said ordinance it would be compelled to pay to the city treasurer, as a license for conducting its business, the sum of $210,000 per annum, amounting to $90,000 more than its gross receipts. It is also alleged that on January 28, 1901, the city council passed another ordinance, as follows:

"*Be it ordained by the City Council of the City of Chicago:*

"Sec. 1. All sign-boards and bill-boards now or hereafter erected on any residence street within two hundred feet of any park, park boulevard or driveway, except sign-boards not exceeding three feet square used for advertising the sale or renting of the property on which they are located, and all signs on buildings on any residence street within said two hundred feet, except signs advertising the business within, are hereafter declared to be public nuisances; and any such first described sign-boards or bill-boards now existing shall be removed by the owners thereof within thirty days after the passage of this ordinance, or upon the failure thereof the same shall be torn down and destroyed under the direction of the commissioner of buildings.

"Sec. 2. Any person violating this ordinance shall be fined not exceeding $100 for the first offense, and for each subsequent offense shall be fined in a like amount and imprisoned not exceeding three months.

"Sec. 3. This ordinance shall take effect and be in force from and after its passage."

This ordinance is also alleged to be void for the same reasons set forth as to the first; that the complainant has no bill-board or sign on any residence street; that all of the signs or bill-boards owned by it are on private property and kept there under leases with the owners thereof, and that by the last named ordinance the city attempts to declare what is a nuisance *per se,* which is beyond its power; that, acting under said ordinances, the complainant has been notified by the building commissioner of the city of Chicago, acting under orders of the mayor, to comply with the provisions of the same, and that during the year 1901, while attempting to repair some of its boards, its men were arrested and imprisoned for violating said ordinances. The prayer is that the court may find and declare said ordinances null and void, and that the defendants may be perpetually enjoined and restrained from tearing down said boards or in any way interfering with the complainant in repairing the same or in erecting new boards.

Answer and replication being filed, the cause was referred to a master, who found that the ordinance of January, 1901, was wholly invalid; also, that sections 4 and 5 of the ordinance of June, 1900, were invalid, but sustaining all other provisions of the latter ordinance. Objections were filed to this report by both parties, on consideration of which the report was amended, finding that so much of section 1 of the ordinance of June, 1900, as provided that signs and bill-boards should not be located nearer than twenty-five feet of the front line of any lot was invalid, and that so much of section 3 as provided that no board should be erected within five feet of any other board was also invalid. All other objections were overruled. Upon a hearing before the court the objections filed by the complainant to said report were ordered to stand as exceptions, which exceptions were all sustained and a decree was entered in substantial conformity

with the prayer of the bill, which has been affirmed by the
Appellate Court. This is an appeal from that judgment of
affirmance.

EDWIN WHITE MOORE, (EDGAR BRONSON TOLMAN,
Corporation Counsel, of counsel,) for appellants.

HENRY W. WOLSELEY, JOHN S. MILLER, and E. ALLEN
FROST, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Appellee filed its bill for the purpose of testing the va-
lidity of the ordinances of June, 1900, and January, 1901.
By the decree both of these ordinances have been held in-
valid. Appellants, however, have devoted their entire argu-
ment to the consideration of the ordinance of June, 1900,
apparently abandoning all question as to the other ordinance.
We will therefore consider only the questions raised as to
the validity of the first named ordinance.

It is claimed by appellee that under clause 17 of section 2,
article 5, of the City and Village act, the city can regulate
and prevent the use of signs on the streets and public places
of the city; that this is a specific provision relating to signs,
and that the power thus expressly granted cannot be added
to by the general language found elsewhere in the act, and
that there is no authority conferred by statute upon munici-
palities to regulate bill-boards erected upon private property.
We cannot agree with this contention, but are of the opinion
that there is ample power, under paragraphs 66 and 75 of
section 1, article 5, of the City and Village act, (Hurd's Stat.
1899, p. 277,) to authorize municipalities to pass reasonable
ordinances covering said subject. Paragraph 66 confers
upon cities power "to regulate the police of the city or vil-
lage and pass and enforce all necessary police ordinances."
We held in the case of *McPherson* v. *Village of Chebanse,*
114 Ill. 46, that the power conferred under this clause is not

limited in its application to the organization and regulation of a police force, but it is extended to embrace the subject matter of police regulation under the general police power of the State. In the case of *Gundling* v. *City of Chicago,* 176 Ill. 340, we said (p. 348) : "The regulation of the police power is hardly susceptible of exact definition, as the exigencies of each case are varying, and the cases are innumerable where the health of the inhabitants of the municipality may be in some degree endangered. When the city council considers some occupation or thing dangerous to the health of the community, and in the exercise of its discretion passes an ordinance to prevent such a danger, it is the policy of the law to favor such legislation, as being humane and essential to the preservation and protection of the community. Municipalities are allowed a greater degree of liberty of legislation in this direction than any other."

The police power of the State is that inherent or plenary power which enables the State to prohibit all things hurtful to the comfort, safety and welfare of society, and may be termed "the law of overruling necessity." (*Town of Lake View* v. *Rosehill Cemetery Co.* 70 Ill. 191 ; *Wabash, St. Louis and Pacific Railway Co.* v. *People,* 105 id. 236.) Anything which is hurtful to the public interest is subject to the police power, and may be restrained or prohibited in the exercise of that power. (*Dunne* v. *People,* 94 Ill. 120; *Cole* v. *Hall,* 103 id. 30; *Harmon* v. *City of Chicago,* 110 id. 400.) All rights, whether tenable or untenable, are held subject to this police power. *Northwestern Fertilizing Co.* v. *Village of Hyde Park,* 70 Ill. 634.

Paragraph 75, *supra,* gives cities and villages power "to declare what shall be a nuisance, and to abate the same, and to impose fines upon parties who may create, continue or suffer nuisances to exist."

"A common or public nuisance is one that affects the public at large and is a violation of a public right, either by a direct encroachment upon public property, or by doing

some act which tends to the common injury, or by omitting to do, in the discharge of a legal duty, that which the common good requires.    *   *   *   Nor is it necessary that all persons in the community, or, in fact, any individual whatever, should be actually annoyed or injured, but it is sufficient if there is a tendency to the annoyance of the public by an invasion of its rights, which all are entitled to exercise if they see fit." (21 Am. & Eng. Ency. of Law,—2d ed.— p. 683.)

In the case of *Harmon* v. *City of Chicago, supra,* we said (p. 413) : "At common law a nuisance was anything that worked hurt or inconvenience or damage. A public or common nuisance was that which affected the public or was an annoyance to the king's subjects at large," and we have had occasion in many cases to hold that certain things fall within the above definition of a nuisance, as in *Seacord* v. *People,* 121 Ill. 623; *Laflin & Rand Powder Co.* v. *Tearney,* 131 id. 322; *Cooper* v. *Randall,* 53 id. 24; *McCartney* v. *Chicago and Evanston Railroad Co.* 112 id. 611; *Ottawa Gaslight Co.* v. *Thompson,* 39 id. 598; *Somerville* v. *Marks,* 58 id. 371; *Sangamon Distilling Co.* v. *Young,* 77 id. 197; *Wahle* v. *Reinbach,* 76 id. 322.

"Police regulations may forbid such a use and such modifications of private property as would prove injurious to the citizens generally." *Wadleigh* v. *Gilman,* 3 Fairfield, (Me.) 403.

"Police regulations to direct the use of private property so as to prevent its proving pernicious to the citizens at large are not void, although they may in some measure interfere with private rights without providing for compensation. This principle was announced in the cases of *Vanderbilt* v. *Adams,* 7 Cow. 349, and *Stuyvesant* v. *Mayor of New York,* 7 id. 588, and the counsel for the failing party in the latter case admitted that the principle was too clear to be questioned. 'The contrary doctrine,' says the court in the same case, 'would strike at the root of all police regulations.'

The order of the mayor and aldermen stands on the same footing as quarantine and fire regulations, and if by such regulation an individual receives some damage it is considered as *damnum absque injuria.* The law presumes he is compensated by sharing in the advantages from such beneficial regulations.—*Dore* v. *Gray,* 2 T. R. 358; *Governor* v. *Meredith,* 4 id. 794." *Baker* v. *Boston,* 12 Pick. 193. See Cooley's Const. Lim. 748; 1 Dillon on Mun. Corp. sec. 405.

"If the public safety or public morals require the discontinuance of any manufacture or traffic, the hand of the legislature cannot be stayed from providing for its discontinuance by any incidental inconvenience which individuals or corporations may suffer. All rights are held subject to the police power of the State. * * * Whatever difference of opinion may exist as to the extent and boundaries of the police power and however difficult it may be to render a satisfactory definition of it, there seems to be no doubt that it does extend to the protection of the lives, health and property of the citizens and to the preservation of good order and public morals. The legislature cannot, by any contract, divest itself of the power to provide for these objects. They belong emphatically to that class of objects which demand the application of the maxim *salus populi suprema lex,* and they are to be attained and provided for by such appropriate means as the legislative discretion may devise. That discretion can no more be bargained away than the power itself. *Boyd* v. *Alabama,* 94 U. S. 645." *Beer Co.* v. *Massachusetts,* 97 U. S. 25.

Where the charter granted to the city power "to make and enforce within its limits such local, police, sanitary and other regulations as are not in conflict with general laws, and are deemed expedient to maintain the public peace, protect property, promote the public morals and preserve the health of its inhabitants," it was held that an ordinance declaring it "unlawful for any person, firm or corporation to erect, build, construct or maintain in the city any fence,

building or other structure of or to a greater height than six feet from the surface of the sidewalk, street or ground where the same is erected, * * * for the purpose of painting thereon any sign," etc., or for posting bills or advertisements, is within the power of the city council. *In re Wilshire,* 103 Fed. Rep. 620.

Under a city charter authorizing the common council to enact ordinances to prevent and abate nuisances and for the good government of the city, it was held the city had power to pass an ordinance prohibiting the erection of bill-boards exceeding seven feet in height within the city without the permission of the common council, and to authorize the abatement of any board erected in violation of the ordinance, as a nuisance. *Whitmer & Filbrick Co.* v. *City of Buffalo,* 118 Fed. Rep. 773.

Where the city charter conferred power "to license and regulate bill-posters and bill-distributors and sign advertising, and to prescribe the terms and conditions upon which license shall be granted," it was held the city had authority to regulate bill-boards, so far as such regulation was necessary to the safety or welfare of the inhabitants of the city or persons passing along the street. *City of Rochester* v. *West,* 164 N. Y. 510.

Where the charter authorized the city "to enact such ordinances as should be deemed expedient for the government of the city and the promotion of peace and good order," it was held this was similar to authority to provide for the welfare and safety of the community, and an ordinance limiting the size of a bill-board was held valid. (*Gunning System* v. *City of Buffalo,* 77 N. Y. Supp. 987.) In the latter case the court referred to the case of *City of Rochester* v. *West, supra,* and the express authority conferred therein, and held this equally valid.

The basis of sustaining the ordinance in all the cases is, that it is an exercise of the police power for the safety and welfare of the public. An act calculated to promote the

health, comfort, safety and welfare of society may be regarded as an exercise of the police power of the State. (*Eden* v. *People,* 161 Ill. 296; *Ruhstrat* v. *People,* 185 id. 133.) This court very recently said: "In the exercise of the police power the State may require that the individual so manage and control his own property that the public health, public peace and public welfare may be conserved. Usually the police power is invoked to restrict the owner in those uses of his property which he might have as a matter of natural right, so as to conform to the welfare of established society. It is said to be founded on two maxims: First, 'so use your own property as not to injure others;' and second, 'the safety of the people is the supreme law.'—22 Am. & Eng. Ency. of Law, (2d ed.) pp. 916-918." *City of Chicago* v. *Rogers Park Water Co. ante,* p. 212.

We think it clear that either under paragraph 66 or 75, *supra,* full power and authority are conferred upon cities, towns and villages to regulate the construction and use of bill-boards within their corporate limits, provided the regulation is not unreasonable. Moreover, paragraph 78 of section 1, article 5, confers upon cities and villages the right "to do all acts, make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease." No argument need be advanced that the structures described in the bill before us may become a menace to the safety of the public, and hence the subject of control and regulation. They may be erected in such a manner as to be dangerous to the public by falling or being blown down, or constructed of such materials and dimensions as to be dangerous, or placed upon buildings or other structures in such a manner as to endanger the life and limb of the citizen, or erected within the fire limits in such proximity to buildings as to increase the danger of loss by fire, or so as to obstruct the view of railroad crossings and thus endanger life by accident, or have printed or displayed upon them obscene characters tending to demoralize and injure the public

morals. If boards are erected in violation of any of these public rights or interests, and of others which might be mentioned, there is ample power within the statute to regulate them, provided such regulations are reasonably necessary for the protection of the public health, morals or safety. Nor will the mere fact that such structures are placed upon private property, and not on the public streets, protect those owning or using them against such reasonable regulations. The police power invades individual rights and property whenever private individuals, by the use of their private rights or private property, injure the public in any of the above mentioned ways. The one essential and universal limitation upon the exercise of the police power is, however, that the regulation shall be reasonably necessary and reasonably exercised. The question therefore remains to be considered whether the municipal authorities have in this case reasonably exercised the power vested in them,—in other words, whether the ordinance of June 29, 1900, (the only one here in question,) is reasonable.

The first four sections of the ordinance relate to signs and bill-boards to be thereafter erected. Section 1 provides that they shall be constructed of sheet or galvanized iron, or some equally non-combustible material, shall not exceed one hundred square feet in area, and shall not be located nearer than twenty-five feet back of the front line of the lot. Section 2 provides that they shall not exceed ten feet in height above the level of the adjoining streets and the base shall be at least three feet above the level of the street, and in case the grade of adjoining streets has not been established they shall not exceed ten feet above the surface of the ground. Section 3 provides that one board shall not be erected within five feet of any other board and that each shall have independent supports. All of these provisions are general in their terms and apply alike to boards erected in every part of the city. In a great city like Chicago the court will take judicial notice that bill-boards are of various kinds, generally made out of

a variety of materials and erected in many different localities,—some in the thickly settled and business districts, where the erection of· wooden buildings may properly be prohibited, or in the vicinity of electric wires, where more stringent regulations are reasonably necessary to protect the public safety, or they may be in the remote and more thinly settled territory of the city, where such stringent precautions are not necessary, while others may be on vacant tracts of land far removed from other structures of every kind. It must be apparent to all reasonable minds that provisions which are necessary in one of such cases would be wholly unnecessary and unreasonable in the others, and that a provision might be a reasonable police regulation in the one case and in one locality which would be wholly unreasonable under other circumstances in another locality. This ordinance is, however, without qualification or limitation, applicable to signs and bill-boards alike in all portions of the great city of Chicago,—applicable alike to every portion of its extended territory. We do not hold that this ordinance is so unreasonable as to be void if it were limited to particular districts of the city. Nor do we question the doctrine announced in *City of Mt. Carmel* v. *Shaw,* 155 Ill. 37, and other cases holding that "where the municipal authorities are acting within their well recognized powers or are exercising a discretionary power, a court of equity has no jurisdiction to interfere unless the power or discretion is being manifestly abused to the oppression of the citizen." Where, however, as here, the attempt is to prohibit the owner of a lot in a remote, sparsely settled part of the city, or his lessee, from erecting a sign or bill-board thereon except of required material, "sheet or galvanized iron," etc., we think it does become unreasonable and oppressive.

Section 4 provides that no sign or bill-board shall be erected upon any boulevard or pleasure drive, or in any street where three-fourths of the buildings in such street are devoted to residence purposes, without the consent, in writing,

of at least three-fourths of the residents and property owners on both sides of the street in the block where it is desired to erect such board. There is no evidence in the record upon which to base the reasonableness of this provision. It seems to be an arbitrary restriction on the part of the city, depriving an individual property owner of the use of his property as he may choose, without any showing that such use would be injurious to others in the same vicinity. On the evidence before us that section must be held unreasonable and void.

Section 5 provides that all signs and bill-boards erected before the passage of the ordinance which shall exceed one hundred square feet in area or are of a greater height than ten feet above the surface of the ground shall pay an annual license of fifty cents per square foot, and in default of such payment shall be torn down. The evidence shows that under this section appellee would be required to pay to the city $210,000 per year while its gross income is but $120,000 per year. All of these signs and bill-boards upon which this license would have to be paid were erected by appellee under the ordinances of the city as they existed at the time they were built, and the city, in some instances, received a license fee for the privilege of erecting the same. This provision of the ordinance is not only unreasonable in its terms but is prohibitive of appellee's business, and if enforced appellee would be required to pay more than one and one-half times the amount of its gross income or have its property destroyed. An ordinance which is unreasonable, unjust and oppressive will be held by the courts to be void. *Hawes* v. *City of Chicago,* 158 Ill. 653.

The purpose of sections 4 and 5 seems to be mainly sentimental, and to prevent sights which may be offensive to the æsthetic sensibilities of certain individuals residing in or passing through the vicinity of the bill-boards. The extreme restrictions placed on the erection and maintenance of such boards, and the license fee placed thereon, indicate that these

sections were intended to be prohibitive rather than regulative, and are, in our judgment, unreasonable.

Our conclusion therefore is that the decree of the superior court was right and properly affirmed by the Appellate Court, not for want of power in the city council of the city of Chicago to pass an ordinance reasonably regulating the erection and maintenance of bill-boards, but because, under the allegations of the bill and the proofs made by complainant below, the ordinance here in question is unreasonable.

*Decree affirmed.*