(No. 19349.
THE PEOPLE *ex rel.* Glen L. Russell, Appellee, *vs.* JAMES H. ANDREWS *et al.* Appellants.

*Opinion filed April 17, 1930.*

STURTZ & EWAN, for appellants.

JOHN T. CUMMINGS, for appellee.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellee, Glen L. Russell, filed a petition in the circuit court of Henry county against appellants, the mayor and city council of the city of Kewanee, for a writ of *mandamus*

to compel them to issue to Russell a license to install a filling station and two storage tanks in the city of Kewanee, as provided by an ordinance of the city. Appellants demurred to the petition as amended, the demurrer was overruled, they elected to stand by their demurrer, the writ was ordered to issue as prayed, and an appeal was prosecuted to this court, the trial court having certified that the validity of a municipal ordinance was involved and that the public interests required that the appeal be taken directly to this court.

On May 12, 1928, the city council of Kewanee passed an ordinance containing fourteen sections, entitled "An ordinance regulating the sale of petroleum and its products at filling stations and requiring an application for conducting, operating and carrying on a filling station, and providing a license therefor." No question is raised as to the validity of this ordinance except as to section 9, which is as follows:

"Sec. 9. *Location—frontage consent*—No person, firm or corporation shall locate, build, construct or maintain any filling station in the city in any place where two-thirds of the buildings within a radius of 300 feet from the center of the lot on which any filling station is to be built, are used exclusively for residence purposes, without the written consent of a majority of the owners of all the buildings within such radius."

The petition alleged that Russell made application to appellants for a license under this ordinance and that his application was refused; that he complied with the provisions of all ordinances of the city except section 9 of the ordinance above quoted; that the real estate on which he applied for a license is located at a place where two-thirds of the buildings within a radius of 300 feet from the center of the lot on which the filling station is to be located are used exclusively for residence purposes; that he did not obtain the written consent of the majority of the owners of all of the buildings within such radius; that the city

had power to regulate filling stations but it had no power to pass an ordinance controlling the location of filling stations, or requiring the written consent of a majority of the owners of all buildings within a radius of 300 feet from the center of the lot on which said station was to be located; that section 9 of the ordinance was beyond the power of the city council to pass or enforce, and it is unreasonable, discriminatory, *ultra vires,* null and void and of no force and effect.

Several questions are raised upon this appeal, but it will be necessary to consider only one of them, namely, the validity of section 9 of the ordinance. All ordinances must be reasonable. In determining whether an ordinance is reasonable the court may take into consideration the object to be accomplished by the ordinance, the means provided for its accomplishment and all existing conditions and circumstances. (*Troy* v. *Village of Forest Park,* 318 Ill. 340; *City of Sullivan* v. *Cloe,* 277 id. 56.) In the former case it was held that an ordinance forbidding the location of a public garage within 750 feet of the grounds of a church, irrespective of the character of the particular location of the garage or the size of the church grounds, and without any provision for the consent of the authorities of the church sought to be protected, was unreasonable, arbitrary and void. An ordinance must be general in character, and it must operate equally upon all persons of the same class within the municipality. It must not be in violation of any law, contrary to public policy or unnecessarily oppressive. (*City of Chicago* v. *Gunning System,* 214 Ill. 628; *Zanone* v. *Mound City,* 103 id. 552.) In the former case an ordinance prohibited the erection of a bill-board on any street where three-fourths of the buildings were residences, without the consent in writing of at least three-fourths of the residents and property owners on both sides of the street in the block where the board was to be erected, and it was held to be arbitrary and void in the absence of evi-

dence in the record showing the reasonableness of the provisions. Ordinances have been approved which provide for a frontage consent within a restricted area as a condition precedent to the right to do certain things as provided in the ordinance, but even an ordinance based on a frontage basis must be reasonable and not arbitrary and oppressive. (*Smolensky* v. *City of Chicago,* 282 Ill. 131; *Cusack Co.* v. *City of Chicago,* 267 id. 344; *People* v. *Busse,* 240 id. 338.) In *Western Theological Seminary* v. *City of Evanston,* 325 Ill. 511, on page 521, it was said: "The privilege of every citizen to use his property according to his own will is both a liberty and a property right. 'Liberty' includes not only freedom from servitude or restraint, but also the right of every man to be free in the use of his powers and faculties, to pursue such occupation or business as he may choose, and to use his property in his own way and for his own purpose, subject only to the restraints necessary to secure the common welfare." In *People* v. *Village of Oak Park,* 331 Ill. 406, an ordinance attempted to define what was a residence district based on the number of buildings located within the district, without reference to the frontage of the lots upon which the respective buildings were located. The ordinance was held to be invalid when applied to the particular facts and circumstances in that case, because it produced an arbitrary and oppressive result and prevented the erection of a filling station in a section of the city devoted to commercial pursuits, and which, considering property frontage instead of the number of buildings, could be classed as a business section, there being one filling station and a garage within the area.

Section 9 of this ordinance applies to all places within the city regardless of their location, the only condition being that two-thirds of the buildings within a radius of 300 feet from the center of the lot on which a filling station is to be built are exclusively used for residence purposes. The section does not provide that the written con-

sent shall be by a majority of the owners of the buildings which are used exclusively for residence purposes or by the majority of frontage, but the written consent must be by a majority of the owners of all buildings within such area, regardless of their kind, character or location and whether used for stores, factories, residences or for any other purpose. The requirements of this ordinance are unfair and unreasonable in basing the consent on the number of buildings within the district regardless of their character or size or the size of the lot upon which they are located. Under the ordinance the owner of a building in a residential district, regardless of its use, size or character, located upon a small lot, has the same right in the control of the district as the owner of a large lot with an extensive frontage. The owner of a small frontage with numerous buildings could control the district as against the owner of a majority of the frontage, with fewer, but larger and more extensive, buildings. If a majority of the frontage on which there were buildings was owned by a minority of the owners of the buildings within the restricted district, or a minority of the frontage on which there were numerous buildings was owned by a majority of the owners of the buildings within the district, the requirements of section 9 would create an unfair and inequitable advantage. In the outskirts of all cities and villages there are generally numerous vacant lots. If there was a residence district where there were only two buildings within a radius of 300 feet from the center of the lot upon which it was sought to construct a filling station, the party desiring to construct a filling station would be required to procure the consent of the owners of both buildings, and the owners of all the other vacant real estate within the district would have nothing to say with reference to the location of the filling station. This would give the owners of the two buildings, whether they were hovels or mansions and whether they occupied 10 feet or 100 feet of frontage, the

unreasonable, arbitrary and oppressive power to control the whole district as far as filling stations were concerned, to the probable detriment of all other property.

For these reasons section 9 of the ordinance is invalid, the demurrer was properly overruled, the judgment was properly entered, and it is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*