Continental Illinois Bank & Trust Company, Trustee (formerly Illinois Merchants Trust Company, Trustee), Appellant, v. Standard Oil Company of Indiana, Appellee.

Gen. No. 33,841.

426

Opinion filed May 14, 1930.   Rehearing denied June 2, 1930.

Harris F. Williams, for appellant.

Barrett, Barrett & Wermuth, for appellee; William C. Wermuth, of counsel.

Mr. Presiding Justice Wilson delivered the opinion of the court.

Complainant, Continental Illinois Bank & Trust Company, filed its bill in the circuit court of Cook county to restrain the defendant, Standard Oil Company of Indiana, from installing and operating certain gas tanks to be used as part of and in connection with a gasoline filling station on the premises at 406 Pratt Boulevard, Chicago.

The cause was heard upon the bill as amended, answer to the bill as amended and replication. The cause was referred to a master in chancery, on the sole question as to whether or not conplainants would be damaged by the acts complained of in the bill of complaint as amended.

From the facts it appears that the Standard Oil Company of Indiana was the owner of lot 18, in block 41 in Rogers Park. The complainant, as trustee, was possessed of the legal title to lot 17 in the same block and subdivision. Lot number 18, owned by the defendant, extended along a dedicated street known as Glenwood Avenue. Opposite lot 18, and running parallel thereto, along the dedicated street known as Glenwood Avenue, is the right-of-way of the Chicago, Milwaukee & St. Paul Railroad Company. The district in which both lots 17 and 18 are located has been zoned by the City of Chicago for commercial purposes. The master found, and it appears to be the fact, that there was no ordinance in the City of Chicago requiring frontage consents for the erection of a gasoline filling station. There appears, however, to have been in effect at the time a provision of the Chicago

Code, Chapter 41, entitled "Inflammable Liquids," which provides that it shall be unlawful to install any tank or tanks for the storage of any liquids (including gasoline) without first obtaining the written consent of the property owners representing a majority of the total frontage in feet of any lot or plot of ground lying wholly within lines 150 feet distant from and parellel to the boundaries of the lot or plot of ground upon which said tank or tanks are to be installed.

Lot 18, belonging to the defendant, while running along the dedicated street known as Glenwood Avenue, in fact fronted on Pratt Boulevard. Lot 17, owned by the complainant, as trustee, also fronted on Pratt Boulevard. The dedicated street, known as Glenwood Avenue, runs north and south. Pratt Boulevard runs east and west.

The defendant procured from the city and the North Shore Park Commissioners, permits for the erection of the buildings necessary for its filling station and driveways into its property. None of these permits required frontage consents. Complainant's lot was improved with a two-story frame residence which was 23 or 24 years old. Lot 18, after its purchase by the defendant, was divided into two lots, one fronting on Pratt Boulevard upon which the filling station was to be erected, and the other, the rear lot, extending along the dedicated street known as Glenwood Avenue, to a vacated alley. It was upon this second lot, created out of lot 18, owned by the defendant, that the tanks were to be placed and it was for the purpose of installing the tanks upon this second lot, created out of lot 18, that the permit was obtained from the city.

The frontage consents required by the city included the signature of the Chicago, Milwaukee & St. Paul Railroad Company and the Standard Oil Company's consent as to the lot owned by it fronting on Pratt Boulevard and extending along the dedicated street.

These consents, if within the meaning of the ordinance and valid, constituted over a majority of the requisite frontage consents.

It is urged as ground for reversal: first, that the defendant had not the right to divide its lot, as this was done solely for the purpose of obtaining the requisite frontage consent and that, without this arbitrary division, it would have been unable to comply with the ordinance requiring a majority of the frontage consents. Second, that the Chicago, Milwaukee & St. Paul Railroad Company is a foreign corporation and had no right to sign the frontage consent and, moreover, that even if it had such right, there is not sufficient evidence showing that the person signing for the railroad company had authority so to do. Third, the chancellor erred in finding that there was no special damage to the complainant by reason of the installation of the tanks and the use to which they were to be adapted.

In regard to the first proposition, there appears to be no reason preventing the owner of a lot from dividing it as he sees fit. If that part of lot 18, facing Pratt Boulevard, was to be used for any other purpose than a filling station, the question would not arise. It is insisted that this arbitrary division of the lot is made by the defendant for the sole purpose of permitting it to include the frontage consent of that part of its own lot lying along the dedicated street and fronting on Pratt Boulevard. None of the tanks are installed on the front part of lot 18, which originally was 179 feet long, but only on that part of lot 18, carved out and set apart by the defendant as a separate lot. If it had the legal right to do this, and by so doing strictly complied with the ordinance, we are not prepared to say that its conduct in so doing would be such a fraud as in law would nullify its right to make the division of lot 18, as has been done.

As to the second point advanced by counsel for complainant, namely, the right of the Chicago, Milwaukee & St. Paul Railroad Company to sign the consent, we are of the opinion that while the railroad company is a foreign corporation, still under Cahill's Illinois Revised Statutes of 1929, chapter 32, section 84, ¶ 84, it has the same rights and duties as a domestic corporation if admitted to do business in this State. The railroad appears to be the title owner to the property and, in the absence of any restrictions in the deed under which it holds, we are of the opinion that its rights under such deeds of conveyance would give it the right to grant a frontage consent. Its interest in adjacent property is the same as other owners of real estate. *Spierling v. Ohl*, 232 Ill. 581; *Theurer v. People*, 211 Ill. 296. The answer of the defendant denied the alegation of the bill of complaint as amended, namely, that the person signing the frontage consent was not, in fact, the agent of the railroad company. The burden was upon the complainant to prove this allegation of its bill. *Tibbetts v. West & South Towns Street Ry. Co.*, 153 Ill. 147. It has not done so.

As to the third proposition advanced by complainant, the master's report found that there was "practically no testimony offered showing any damage to lot 17, or to its present or future occupants by reason of the installation of the gasoline tanks alone and exclusive of the filling station." This finding of the master was approved by the chancellor.

It is attempted to defeat the permit on the theory that the installation of the tanks is necessary to the operation of the filling station and that, therefore, the court should consider the question as to whether or not the filling station, by its erection, would cause special damage to complainant. Filling stations and gasoline tanks in connection therewith, have become necessary to city life and are not nuisances *per se*.

Complainant could not object to the erection of the filling station alone because of damage to its property, nor could it object to the installation of tanks alone, unless it could show special damage. The district in question was a commercially zoned district and the physical facts show a railroad embankment running along one entire side of the dedicated street known as Glenwood Avenue, upon which the property of the defendant fronted. The tanks, when installed, were below ground and out of sight, and the only damage which might result to complainant would be by reason of an increased fire risk and, consequently, an increase in insurance rates. The master found in his report, which was affirmed by the chancellor, that there was no testimony that the complainant's property would be unduly exposed to fire risk. There was testimony on behalf of the defendant that the insurance premiums would not be increased. The very purpose of the ordinance in question was to do away with the hazard in the installation of gasoline tanks similar to those involved in this proceeding.

The attempt to couple the filling station and the tank together, in our opinion, is unavailing to the complainant, as this action is not to restrain the erection of the filling station but only of the tanks. While it is true that they have to be run in conjunction with each other, nevertheless, we are not of the opinion that any special damage created by the erection of the filling station should be charged to the installation of the tanks. If this could be done, it would amount to saying that while no objection could be made to the erection of a filling station, nevertheless, it could not be operated because of the objection to the installation of the tanks necessary for its operation. The complainant could recover, if at all, only on the ground of special damage. *Joseph v. Wieland Dairy Co.*, 297 Ill. 574. The court in that case says:

"A court of equity will not at the suit of an individual restrain the threatened violation of an ordinance regulating the erection of buildings where the injunction is sought merely for the enforcement of the ordinance and not because of special damage to the individual, but where it is shown that in addition to the violation of the ordinance the erection will work special and irreparable injury to the property of the individual he may obtain relief by injunction." See also *Morrison v. Standard Oil Co. of New Jersey*, 105 N. J. Eq. 104.

We are unable to say that complainant has shown any special damage which would result to it individually by reason of the installation of the tanks in question.

For the reasons stated in this opinion, the decree dismissing the bill for want of equity is affirmed.

*Decree affirmed.*

Ryner, J., concurs.

Holdom, J., not participating.