George J. Jennings, Appellee, v. Calumet National Bank, Trustee. Joseph J. McCarthy et al., Appellants.

Gen. No. 35,111.

190

Opinion filed June 22, 1931.  Rehearing denied July 6, 1931.

PEDEN, MURPHY & RYAN, for appellants; GERALD RYAN and JOHN C. MELANIPHY, of counsel.

McKINNEY, LYNDE & GREAR, for appellee; WILLIAM E. DEVER, of counsel.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal the defendants seek to reverse a decree entered by the superior court of Cook county enjoining them from using or maintaining a gasoline storage tank to be used in connection with a gas filling station located in certain premises in Chicago.

The record discloses that on February 11, 1929, complainant filed his bill, alleging that he and his wife owned a lot in block 1, which block was located at the southwest corner of 79th street and Jeffery avenue, Chicago; that the defendant Calumet National Bank, as trustee, owned four lots in the block and leased them to the defendant McCarthy; that a permit had been obtained from the City of Chicago by McCarthy to install a 1,000-gallon tank in a part of one of the lots and to construct a gas filling station, and that he was not legally authorized to do so because he had

obtained insufficient frontage consents; that for the purpose of circumventing the provisions of section 2279 of the Municipal Code of Chicago, 1922, the defendants had devised a scheme to install the tank in a part of one of the four lots so that it would require frontage consents of a majority of but 636.6 feet, while by the terms of the ordinance it would require consents from a majority of more than 1,200 feet; that the tank had been surreptitiously installed in the nighttime, and that unless the defendants were restrained complainant's property would be greatly damaged and he would suffer irreparable injury. It was further alleged that the purported consent of the owner of one of the lots, the South Chicago Christian Church, was invalid. There was a further charge that the lot in which the tank was installed was within 200 feet of a church, contrary to the provision of the ordinance.

The City of Chicago and one of the officials, who were made parties defendant, are not involved on this appeal and we shall hereafter refer to the bank and McCarthy as the defendants. The defendants filed their answer denying the violation of any ordinance and averring that what had been done by them was in all respects in accordance with the law.

The case was referred to a master to take the evidence and report. He found that the defendants did not violate the ordinance by designating a part of the lot in which the tank was installed as a "plot of ground"; that the purported consent of the South Chicago Christian Church was invalid and as a result defendants had not obtained sufficient frontage consents, and further found that the complainant had suffered no special damage, and for that reason recommended that the bill be dismissed. Both parties filed objections to the report, most of which were ordered to stand as exceptions before the chancellor, some of them were sustained and some of them overruled, and

the decree entered enjoining the defendants as above stated. The chancellor in effect sustained the master, except that he found that the complainant would suffer special damage in case the tank and filling station were constructed. He found, *inter alia,* that the defendants did not comply with the ordinance because the consent of the South Chicago Christian Church was invalid, therefore defendants had not obtained sufficient frontage consent, and that the complainant would sustain irreparable injury unless the defendants were restrained from using the storage tank in connection with the filling station.

The evidence shows that the defendant bank owned the four lots at the southwest corner of 79th street and Jeffery avenue; that 79th street runs east and west and Jeffery avenue runs north and south. The lots front on 79th street and are 110 feet deep, extending to a 16-foot alley on the south. Jeffery avenue and 79th street are each 66 feet in width. The lots are numbered 1, 2, 3 and 4, lot 1 being the corner lot. It has a frontage of 33.6 feet and the other three a frontage of 25 feet each. The tank was installed in the west 24 feet of the south 25 feet of lot 4, being placed beneath the surface of the ground, and was to be connected with the filling station to be erected on the lots—the gas to be pumped from the tank to the filling station. The piece or plot of ground is 151 feet from the north side of 79th street, 150.6 feet from the east line of Jeffery avenue, and 158.6 feet from the west line of Euclid avenue, the first north and south street immediately west of Jeffery avenue.

Complainant charged the defendants with the violation of section 2279 of the Municipal Code of Chicago, which provides: "It shall be unlawful to install any tank or tanks for the storage of any of the liquids mentioned in section 2277 in any lot or plot of ground without first obtaining the written consent of the prop-

erty owners representing the majority of the total frontage in feet of any lot or plot of ground lying wholly or in part within lines 150 feet distant from and parallel to the boundaries of the lot or plot of ground upon which said tank or tanks is or are to be installed; provided, however, that for the purpose of this ordinance only the frontage of any such lot or plot of ground or that part of the frontage of any part or (of) such lot or plot of ground as comes within the 150 foot limit herein prescribed shall be considered. . . . No such tank or tanks shall be installed in any lot or plot of ground where any of the boundaries of any such lot or plot of ground are within 200 feet of the nearest boundary of any lot or plot of ground used for a school, hospital, church or theatre. . . . Provided, further, that for the purposes of this ordinance, whenever the lot or plot of ground in which such tank or tanks is or are to be installed is in any shape other than a rectangle, the 150 foot limiting line aforementioned shall not extend in distance 150 feet from any point in the boundaries of any such lot or plot of ground.''

It is conceded that the liquids covered by the ordinance include gasoline. If the defendants had the right to lay out the plot of ground at the south end of lot 4 in which the tank was placed, and measure from this plot, the only frontage involved would be those lots fronting on the south side of 79th street and the west side of Jeffery avenue. It is conceded that if the defendants had no such right, but that the 150 feet mentioned in the ordinance must be computed from the boundaries of lot 4, then there were insufficient frontage consents obtained. It is also conceded that even if the defendants' construction of the ordinance is correct, and that the 150 feet be computed from the piece or plot of ground at the south end of lot 4, the defendants did not have sufficient frontage

consents unless the consent of the lot claimed to be owned by the South Chicago Christian Church was valid.

The defendants contend that the ordinance "applies to and restricts only the installation of tanks for storage purposes"; that no reference is made to a filling station and that it is fundamentally a fire prevention ordinance, and *People v. McDonnell,* 238 Ill. App. 224, is cited. In that case a writ of mandamus was awarded against a city official commanding him to restore a license issued to the petitioner " 'to install a 2-1000 tank' for a gas and filling station." The court said (p. 225): "The ordinance forbids the installation of any tank for the storage of the liquids mentioned therein and for which a license is sought 'in any lot or plot of ground where any of the boundaries of any such lot or plot of ground are within 200 feet of the nearest boundary of any lot or plot *used* for a school, hospital, church or theatre.' " The court, continuing, said that the premises in which it was sought to install the filling station fronted on Ogden avenue and in the rear adjoined a lot owned by the Salvation Army fronting on Madison street. Part of the Salvation Army building was divided into stores and apartments and over them in the rear was an auditorium used for conducting religious services; that the trial court held that the "front entrance was more than 200 feet from where the tank or oil filling station was to be put up" and "that the entire building was not used exclusively for religious purposes." The court then said (p. 226): "As to the first ground, it is enough to point out that by the terms of the ordinance the 200 feet are to be measured from 'the nearest boundary of any such lot,' etc., and not from a building on it or its entrance." As to the second ground the court said, considering that the main object of the ordinance was to prevent danger from fire or explosion to the persons who might

assemble in buildings used for schools, churches, etc., that the object was not affected by the mere size of the structure.

Counsel for defendant also cite the case of *Continental Illinois Bank & Trust Co. v. Standard Oil Co.*, 257 Ill. App. 425, as holding that they had the right to set off the plot of ground on the rear of lot 4 and to measure from that plot in determining the number of feet of frontage consents required. In that case a bill was filed to restrain the Standard Oil Company from installing and operating gas tanks to be used as a part of a gas filling station. The opinion states the cause was referred to a master ''on the sole question as to whether or not complainants would be damaged by the acts complained of in the bill.'' The Standard Oil Co. owned lot 18 and the complainant the adjoining lot 17. There was a street between lot 18 and the Milwaukee railroad. The property was zoned for commercial purposes. The court said (p. 428): ''Lot 18, after its purchase by the defendant, was divided into two lots, one fronting on Pratt Boulevard upon which the filling station was to be erected, and the other, the rear lot, extending along the dedicated street known as Glenwood avenue, to a vacated alley. It was upon this second lot, created out of lot 18 . . . that the tanks were to be placed, and it was for the purpose of installing them upon this second lot, created out of lot 18, that the permit was obtained from the city.'' Complainant contended (1) that defendant did not have the right to divide lot 18 solely for the purpose of obtaining frontage consents; (2) that the frontage consent obtained from the Milwaukee railroad was invalid; and (3) that there was no special damage to complainant. The court said that if the Standard Oil company had the right to divide lot 18 into two lots, ''and by so doing strictly complied with the ordinance, we are not prepared to say that its

conduct in so doing would be such a fraud as in law would nullify its right to make the division of lot 18, as has been done.'' And the court held the consent of the Railroad was valid, that there was no special damage shown, and the decree denying the injunction was affirmed.

In the instant case the defendants' application, which was filed with the city for a permit to install the 1,000-gallon gas tank stated that the tank was to be used in connection with the filling station and that the gas would be pumped from the tank to the filling station. We think a proper construction of section 2279 of the ordinance required that the 150 feet mentioned in the ordinance be computed from the boundary lines of lot 4 and not from the piece or plot 25x24 feet at the south end of the lot. The ordinance provides that frontage consents must be obtained from the property owners representing a majority of the total frontage in feet of any lot or plot of ground lying within ''150 feet distant from . . . the boundaries of the lot or plot of ground'' upon which the tank was to be installed. In the instant case the lot upon which the tank was to be installed is lot 4. There is no plot of ground involved. We think the word ''plot'' as used in the ordinance would not apply to ground that was subdivided into ordinary lots but only to other grounds, and that the defendants had not the arbitrary right to set off the small piece at the south end of the lot 4, and by designating it a ''plot'' of ground to reduce the frontage consents required. We think this is the effect of the holding in *People v. McDonnell, supra,* although the specific point made here was not involved.

In view of what we have said it is unnecessary to pass on other contentions made, except the two contentions of the defendants that there is no evidence

of any special damage suffered by the complainant, and that he was guilty of laches.

The law seems to be well settled that a court of equity will not, at the suit of an individual, restrain the violation or threatened violation of an ordinance where there is no special damage to the individual. *Joseph v. Wieland Dairy Co.*, 297 Ill. 574. It has also been held that a filling station is not a nuisance *per se*. *Mitchell v. Wengelewski*, 259 Ill. App. 438. But in the instant case, four experienced real estate men called by the complainant testified in effect that if a filling station were conducted on the four lots in question, it would depreciate complainant's property from 5 to 20 per cent. This testimony was not contradicted. They based their opinions on the fact that in the conduct of the filling station there would be noise, confusion, honking of horns and starting and stopping of motors, etc.

The defendants objected to this evidence on the ground that the ordinance in question related to the installing of storage tanks and that any evidence with reference to the filling station was irrelevant. We think the contention is unsound. It is undisputed that the tank was to be used in connection with the filling station. Defendants' application for a permit, which we have above referred to, expressly so states. In this respect the two cannot be separated. The finding of the chancellor on this point was in favor of the complainant, and upon a careful consideration of all the evidence in the record we are clearly of the opinion that it was warranted by the evidence and with greater reason is it clear that we would not be warranted in disturbing the finding of the chancellor on the ground that it was against the manifest weight of the evidence.

Was the complainant guilty of laches as the defendants contend? The evidence tends to show that on November 6, 1928, complainant (having learned on

November 5 that defendants had installed the tank) caused written notice to be served on the defendant McCarthy. The notice was written by complainant's counsel, in which it was stated that necessary steps would be taken to prevent the construction of the tank and filling station. This notice did not mention the complainant. It stated that counsel represented property owners who objected to the installation of the tank and filling station. It took but one day, October 31, to install the tank. On November 8, demand was made by complainant on the city to revoke the permit. Apparently after the tank was installed nothing was done on the property until about the first week of February, when the defendants began to fill the lots to a depth of about three feet and within a few days after this was observed the bill was filed. The defendant, McCarthy, having been advised on November 6 that property owners in the vicinity were objecting to the installation of the tank and filling station and that they would take necessary steps to prevent the construction of them, and little physical work being done from that date until the beginning of February, when the filling was commenced and the bill filed, we would not be warranted in holding that the complainant was guilty of such laches that a court of equity would not afford him relief. The defendants had received no notice after November 6 that the property owners had changed their minds and would not object to the installation of the plant.

The decree of the superior court of Cook county is affirmed.

*Affirmed.*

MATCHETT and McSURELY, JJ., concur.