City of Monmouth, Plaintiff-Appellant, v. Clyde Lawson, Ernest Rollins, and Carl Graham, Defendants-Appellees.

Gen. No. 10,497.

Opinion filed September 27, 1951. Rehearing denied December 13, 1951. Released for publication December 13, 1951.

FREDERICK HOULTON LAUDER, City Attorney of Monmouth, for appellant.

RYAN & BOUR, of Monmouth, for appellees.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is a case involving an appeal from the circuit court of Warren county wherein the appellees Clyde Lawson, Ernest Rollins, and Carl Graham, the first being a property owner, and the two others construction men, were found guilty and fined $100 in a trial before a justice of the peace for violating an ordinance of the City of Monmouth, which made it unlawful for anyone to build a drive-in gasoline filling station within

the limits of the city, without obtaining a permit from the city council. The three defendants, appellees herein, appealed to the circuit court of Warren county. The circuit court, after hearing a motion to dismiss the suit filed by the appellees, dismissed the suit. After the suit was dismissed, the appellants applied to the trial court for a certificate from him that the public interest required a direct appeal to the Supreme Court. The trial court refused this application. The Supreme Court held that it did not have jurisdiction and allowed appellees' motion to transfer the cause here. (*City of Monmouth v. Lawson*, 408 Ill. 284 (Advance Sheets).)

An examination of the record discloses that after the appeal had been perfected to the circuit court, the appellees filed in the circuit court their motion to dismiss the said cause, alleging in said motion among other things that the ordinance on which the prosecution was based was void, as the City of Monmouth had no power to pass and adopt the ordinance, and that the ordinance was void because it contravened the Fourteenth Amendment of the Constitution of the United States and section 2 of article II of the Constitution of the State of Illinois, and that the ordinance was void because its provisions were unreasonable, arbitrary and oppressive. A copy of the ordinance in question is attached to the motion.

It appears from an examination of the report of the trial proceedings in the record that on the 26th of January 1950, the case was called for trial, the parties appeared in open court by their attorneys, and no evidence was offered on behalf of the city. The defendants' counsel asked the plaintiff's counsel to stipulate that the defendants, Clyde S. Lawson and Helen Lawson, were the owners as joint tenants of Lot 1, Block 17 in Harding's Addition to the City of Monmouth, the property described in the complaint

46

in this cause. Appellant's counsel agreed to this stipulation.

Defendants introduced in evidence certain plats and other documents with reference to the subdivisions of the City of Monmouth. No evidence was offered whatsoever establishing the defendants' guilt of the alleged violation of the ordinance. There is no evidence in the record showing that defendants ever built or constructed the filling station, or ever asked for or were refused a permit to build the same. It is apparent that the parties were proceeding on the theory that if the trial court held the ordinance invalid, the prosecution would be terminated, and if he held the ordinance valid, the matter of how much the defendants should be fined would be considered later by the court.

██ The question presented here, as in the trial court, is, was the ordinance valid or invalid? This question can only be determined by the ordinance itself since there was no evidence offered on this question. The case was a justice of the peace appeal, and there were no written pleadings. The trial was *de novo* in the circuit court. What the justice of the peace found is of no consequence or importance. (*Spieker v. Schonfeld,* 202 Ill. App. 310.)

██ The motion to dismiss is not a motion to dismiss the appeal, but can only be considered as a motion to dismiss the suit on the trial *de novo* in the circuit court. The complaint and other exhibits introduced before the justice of the peace might be considered as pleadings, and, of course, if so considered, the effect of the motion to dismiss the suit would be that the appellees admitted the facts stated in the complaint before the justice, that they had violated the ordinance on its face, but that the violation did not give the court power to impose a fine upon them because the ordinance was invalid. We are not sure that this premise is tenable, but due to the fact that the parties

47

in the trial court and in this court have taken this position, we shall consider the validity of the ordinance in question.

The ordinance upon which the prosecution is based provides in substance: Section 1, that it shall be unlawful for any person to erect or construct a filling station in the City of Monmouth, Illinois, without first having obtained a permit, as hereinafter required. Section 2, if any person shall desire to erect a filling station, there shall be presented to the city council a written application for permission to construct the same, which application shall contain the name of the person to whom the permit is to be issued, a legal description of the premises, the number and size of the containers from which gasoline is to be sold or to be stored, and a general description of the size, style and architecture of the filling station building to be built, together with a general statement as to the kind of material to be used in the construction. Section 3 of the ordinance reads as follows: ''The application required by Section 2 hereof shall be accompanied by a petition requesting or consenting to the issuance of such permit, which petition shall be signed by the owners of a majority of the frontage on both sides of each street passing or adjoining, and for a distance of five hundred feet in each direction on each such street from the lot or tract of ground upon which it is proposed to erect or construct said filling station.''

Section 6 of the ordinance provides that any person violating any of the provisions of this ordinance shall be fined not less than $25 for each offense.

██ There is no question but what the legislature has given cities and villages the right to regulate the storage of gasoline and other petroleum products. This right is conferred upon them by statute, which reads: ''To regulate and prevent the storage of turpentine, tar, pitch, resin, hemp, cotton, gun powder, nitro-glycerine, petroleum, or any of their products, and

other similar combustible or explosive material." (Ill. Rev. Stat. 1949, chap. 24, pars. 23–75 [Jones Ill. Stats. Ann. 21.1705 (1)].) The extent of this power has been discussed in *City of Ottawa v. Brown,* 372 Ill. 468, *Fligelman v. City of Chicago,* 348 Ill. 294. It is an elementary rule of law in this State that regardless of the delegation of power to the city by the legislature, an ordinance to be valid must be reasonable, just, and not oppressive. This question has arisen in many cases in this State and the courts have determined whether an ordinance is invalid because it is unreasonable, unjust and oppressive.

*City of Chicago v. Gunning System,* 214 Ill. 628 is a case involving the validity of a city ordinance which attempted to regulate the erection of billboards in the City of Chicago. The ordinance provides that the billboards should be constructed in a certain manner, and be located on certain portions of lots within the city at certain heights. The ordinance was general in its terms and made no distinctions as to the requirements, regardless of where the billboards were to be located. The court held the ordinance unreasonable, oppressive, and invalid.

The case of *People v. Andrews,* 339 Ill. 157, involved the validity of an ordinance providing for a license to install a filling station in the City of Kewanee. Section 9 of the ordinance in this case provided: "No person, firm or corporation shall locate, build, construct or maintain any filling station in the city in any place where two-thirds of the buildings within a radius of 300 feet from the center of the lot on which any filling station is to be built, are used exclusively for residence purposes, without the written consent of a majority of the owners of all the buildings within such radius." The court says on page 159: "All ordinances must be reasonable. In determining whether an ordinance is reasonable the court may take into consideration the object to be accomplished by the

49

ordinance, the means provided for its accomplishment and all existing conditions and circumstances." The court further says on page 159 of the opinion: "An ordinance must be general in character, and it must operate equally upon all persons of the same class within the municipality. It must not be in violation of any law, contrary to public policy or unnecessarily oppressive. (Citing cases.)" The court again says on page 160: "In *Western Theological Seminary v. City of Evanston,* 325 Ill. 511, on page 521, it was said: 'The privilege of every citizen to use his property according to his own will is both a liberty and a property right. "Liberty" includes not only freedom from servitude or restraint, but also the right of every man to be free in the use of his powers and faculties, to pursue such occupation or business as he may choose, and to use his property in his own way and for his own purpose, subject only to the restraints necessary to secure the common welfare.' " The court held the ordinance in question invalid.

 It must be borne in mind in this case that the ordinance in question is not a zoning ordinance, but its validity only exists for the reason that it is proper for a city under its police powers as delegated by the State, to provide for the safety and welfare of its citizens. The delegation of this power is not to permit the city to arbitrarily say what kind of filling station shall be permitted to be built. The size, style and architecture of the filling station, number and size of tanks, the kind of material to be used in its construction are only valid to carry out the purpose of the ordinance, to protect the citizens from being harmed or injured due to the dangerous and explosive character of the merchandise sold from a filling station, and for no other purpose. The ordinance in question makes no provision whatever as to what type of station is required to be built in the city. No specifica-

tions are inserted in the ordinance. It leaves an arbitrary power in the city to require an owner who desires to erect a filling station to submit his plans and specifications, and hope that the city wisely will approve them and issue the necessary permit. It is true, as urged by appellant, that the city might be mandamused to issue a permit if the plans and specifications were reasonable. This is not sufficient. It appears to us the ordinance should contain, at least in a general way, what the requirements are. For this reason alone we believe the ordinance is unreasonable, oppressive and void. Section 3 of the ordinance in question requires the person who wishes to obtain the permit to present to the city council a petition signed by a majority of the owners of the frontage on both sides of each street for a distance of five hundred feet. The ordinance provides that the owners sign the petition. It says nothing whatever about whether the owners are residents within the area, and therefore might be interested in whether the filling station should be built or not. It does not apply only to a residence portion of the city. The way it reads it would apply to any part of the city. It might be necessary to obtain the signature of a majority of the property owners under this ordinance where there are already numerous filling stations within the five hundred feet area. It might be a manufacturing region or store region, or it might be in the outskirts of the city, on a corner or unsubdivided area where the surrounding territory would be owned by one person who might by refraining from signing the petition cause the permit not to be issued. It cannot be said that a filling station is a nuisance *per se* and that the city has power to suppress them. (*People v. Washingtonian Home of Chicago,* 361 Ill. 522; *Continental Illinois Bank & Trust Co. v. Standard Oil Co. of Indiana,* 257 Ill. App. 425.) In our modern civilization filling stations are

51

as necessary as grocery stores or drug stores, and any ordinance limiting their erection or operation must be reasonable, not arbitrary nor oppressive.

The case of *Klumpp v. Rhoads,* 362 Ill. 412, is a case where the facts are quite parallel to the facts in the instant case. This case also involved the validity of a similar filling station ordinance. This ordinance provided that it shall be unlawful to build, construct or maintain on any street in the city in any block in which two-thirds of the buildings on both sides of the street are used exclusively for residence purposes, any building for a livery stable, garage, gas or oil station, etc., without the consent of two-thirds of the property owners, according to frontage, on both sides of such street. The ordinance provided the consent must be obtained regardless of the length of the street or the character of the occupancy of the other blocks. The suit sought to enjoin defendants from operating a gasoline, oil and ice service station. They were enjoined by the lower court, and the case was reversed by the Supreme Court. The court said on page 415 of the opinion: "A requirement for the consent of property owners who have no interest in the matter is arbitrary, oppressive and unreasonable. Such ordinances violate the due process clause of the State and Federal constitutions. (Citing authorities.) The principles underlying the holdings in those cases have been so often announced it is unnecessary to repeat them."

The principles announced in the *Klumpp* case, *supra,* are applicable here. Section 3 of the ordinance requires that the petition be signed by the owners. It says nothing about the residents who live in the area. It is difficult to see how in many cases an owner of property in the area could be affected by the erection of a filling station. The persons who are most vitally affected are the people who are residents in the area. There is no provision in this ordinance for the residents to sign the petition. There is no provision in

52

the ordinance referring to the area as a residential district. This ordinance requires a petition, regardless of the character of the neighborhood, whether it is commercial or residential. There is no proof in the record showing what the character of the area is. Under Section 3 of this ordinance it would require an owner of property who desired to erect a filling station to obtain the necessary petitioners, even though the filling station was located in a commercial area where there were other filling stations and business houses within the same. For the above reasons and under the authorities as we see them, this ordinance is unreasonable, oppressive and void, and the trial court was correct in dismissing the suit.

There is another reason why the judgment of the trial court should be affirmed. It appears from the record that after the order of dismissal had been entered by the trial court, he was asked to certify that the public interest was involved so the matter might be appealed to the Supreme Court. The order of the court reads: ''And the court having read said motion and having heard the evidence adduced and the argument of counsel and being fully advised in the premises, orders that said motion be, and the same is, hereby allowed insofar as the request to certify that the validity of an ordinance of the City of Monmouth is involved, but that the motion to certify that the public interest is involved be, and the same is, hereby denied for the reason that it appears to the court by statements of the counsel for both the plaintiff and the defendants that the City has granted a permit to construct the filling station involved in said litigation, which permit was granted on the first Monday of April, 1950, and it is therefore the judgment of the court that the public interest is not involved.''[1]

 The offense charged here is for a violation of a city ordinance, and is sometimes called a quasi-criminal proceeding. It is said in 25 R. C. L. 941,

Par. 194: "It is with reference to statutes defining crimes and providing their punishment that repeals operate with the utmost freedom. In such case the extinction of the statute is understood to be an indication that the sovereign power no longer desires the former crime to be punished or regarded as criminal. Therefore when such a statute is repealed, it is as if it never existed except for the purpose of proceedings previously commenced, prosecuted, and concluded, and even a plea of guilty before the repeal will not authorize the court to pass sentence. The general rule that the repeal of a criminal statute nullifies all proceedings under it has been applied to ordinances and to local option laws."

In *People v. Speroni,* 273 Ill. App. 572, this court recognized the above rule and held where a criminal statute was repealed without a saving clause as to pending actions, the court of review must decide the case according to the law at the time of final judgment in the reviewing court, and cannot pronounce, enforce or inflict punishment for the violation of a statute that no longer exists.

■■■ In this case it is not denied by counsel for either side that the City of Monmouth, prior to the trial court's order dismissing the case, granted the defendants a permit to operate the filling station. It appears, under the above authorities which have been held to apply to a city ordinance, that this is tantamount to a repeal of the ordinance so far as these defendants are concerned. It must be remembered that this is not a suit for a declaratory judgment to determine whether the ordinance is valid (Ill. Rev. Stat. 1949, chap. 110, par. 181.1), but is a suit for penalty against the defendants for violation of an ordinance, which the city by granting defendants a permit have in effect held that the public policy of the city is not to inflict punishment for the alleged violation of the ordinance. In effect, so far as these defendants are

concerned the ordinance has been repealed, and the effect of the repeal pending final determination of the cause in this court would not justify this court to reverse the case, if they could not be punished under the terms of the ordinance. It also might be said that the question has become moot. Also for this reason we believe the judgment of the trial court should be affirmed.

*Judgment affirmed.*